[Civ. No. 13317. First Dist., Div. Two. May 27, 1947.]

ZORA A. LOVELAND, Appellant, v. CITY OF OAKLAND et al., Respondents.

Frank E. McGuire and Louis B. DeAvila for Appellant.

F. B. Fernhoff, City Attorney, and John W. Collier, Assistant City Attorney, for Respondents.

DOOLING, J.—Prior to June 1, 1938, Victor F. Loveland was a member of the Fire Department of the City of Oakland. On that date he was retired on half pay by resolution of the board of trustees of the firemen's relief and pension fund of that city. On September 19, 1937, while answering a fire alarm, Loveland had suffered an occlusion of one of the coronary arteries which supply the heart muscle with blood and the heart muscle was thereby impaired. Two physicians who examined Loveland certified to the board that his activities on September 19, 1937, were precipitating factors of his disability. He was retired pursuant to section 103 of the Oakland charter, which read at that time:

"Any member of the department who shall become physically disabled by reason of any bodily injury received in the performance of his duty upon his filing with the Board of Trustees a verified petition, setting forth the facts constituting such disability, and the cause thereof, accompanied by a certificate signed by the Chief of the Fire Department, the Chief of the Battalion to which he belongs, and by two regularly licensed physicians of the city, recommending his retirement upon a pension, on account of such disability, may be retired from the department upon an annual pension, equal to one-half the amount of salary attached to the rank which he held one year prior to the date of such retirement, to be paid to him in equal monthly installments during the balance of his lifetime and to cease at his death. In case his disability shall cease, his pension shall cease, and he shall be restored to the service in rank he occupied at the time of his retirement; provided that the said Board of Trustees may of its own motion retire any member who shall become physically disabled by reason of any bodily injury received in the performance of his duty, who upon examination by two regularly licensed and practicing physicians appointed by the Trustees for that purpose, may be ascertained to be by reason of such disability unfit for the performance of his duty." (Stats. 1919, p. 1370.)

Loveland died on December 23, 1943. His widow, the petitioner and appellant herein, petitioned for a pension under section 103a of the Oakland charter, adopted in 1941:

"Notwithstanding any other provision set forth in Section 103, if a retired member of the Department shall die at any time by reason of the bodily injury for which he was pensioned, his pension shall not cease but shall continue and shall

be paid to his widow to whom he was married at the time of such injury. . . ." (Stats. 1941, p. 3398.)

The trustees of the pension fund denied her petition and appellant commenced this proceeding in mandate in the superior court. The superior court likewise denied her relief and appellant takes this appeal. The superior court found: "that said Victor F. Loveland did not die on the 23rd day of December, 1943, by reason of the bodily injury for which he was pensioned." Appellant attacks this finding as unsupported by the evidence.

In support of her case appellant introduced the reports of Drs. Alexander and Rogers upon which the original retirement order was based; the report of a Dr. Shelley dated January 20, 1941 "that I have examined Victor Loveland and find his physical condition such that he is totally disabled from work of any kind"; a letter from a Dr. Leahy dated October 16, 1943, to appellant stating "that your husband is suffering from severe bronchial asthma and heart disease and is being treated for both conditions . . . undoubtedly Mr. Loveland will never be cured, but that the condition can only be improved"; a letter from a Dr. Morrison, more fully quoted hereafter, and the death certificate.

The letter from Dr. Morrison states:

"This is to certify that I gave medical care to Mr. V. Loveland of Oakdale from June 1942 to Sept. 1943 and at the latter date I entered the Armed Forces. During the above mentioned dates Mr. Loveland suffered from a chronic heart ailment due to multiple Coronary Thrombotic episodes and several times became so decompensated that it did not look he would survive. It is quite remarkable that anyone with as extensive cardiac damage as he had did not die at a much earlier date."

The death certificate recites:

"Immediate cause of death, cardiac failure, duration 3 wks.

"Due to coronary arterial disease, duration 6 yrs.

"Due to cardiac asthma."

It is appellant's theory that the retirement for disability of the heart is res judicata that her husband was disabled by a heart injury in the performance of his duty and, in view of the provision of section 103 of the charter that "in case his disability shall cease, his pension shall cease, and he shall be

restored to service," the failure to restore him to service is conclusive that his service-connected disability continued until his death. So far we may follow appellant without dissent.

The next step in her argument proceeds: Loveland was suffering from an impairment of the heart incurred in the performance of duty; he died of heart failure; therefore his death was caused by reason of the bodily injury for which he was pensioned.

■ There is a disarming appearance of logical consistency in the sequence: a. heart injury; b. death from heart failure; *ergo,* c. the death from heart failure was caused by the heart injury. This conclusion, however, was left entirely to inference, since appellant offered no direct proof of the cause of death. The burden was upon appellant to establish the cause of death (*Ellenberger* v. *City of Oakland,* 59 Cal.App. 2d 337 [139 P.2d 67]) and in the face of the adverse finding below she bears the heavy burden before this court of showing, not that the evidence will support a finding that her husband's service-connected injury caused his death, but rather that it will not support the contrary finding actually made; or, to put it affirmatively, appellant must convince us that the evidence compels a finding that her husband's death was caused by the injury for which he was pensioned.

■ The only direct evidence as to cause of death was produced by the respondent. Dr. Rogers, one of the physicians who examined Loveland in 1938, and reported to the pension fund trustees, testified that in his opinion Loveland's death was not caused by the injury to his heart for which he was pensioned. He based his testimony on his own examination of Loveland in 1938, all of the medical reports in evidence and the death certificate. It was his testimony that the primary cause of a coronary occlusion is arteriosclerosis; that the coronary occlusion of 1937, for which Loveland was pensioned was due to arteriosclerosis, with his exertion in performance of duty as a precipitating cause; that any subsequent occlusion would be caused by the preexisting arteriosclerosis and not by the occlusion of 1937; that the "multiple coronary thrombotic episodes" referred to in Dr. Morrison's letter, quoted above, were subsequent coronary occlusions not in any way caused by the 1937 episode, but due entirely to the preexisting arteriosclerosis; and that, whether Loveland's death from heart failure was caused by a particular coronary occlusion or by a gradual degenerative process of the heart as

a result of a series of successive occlusions, the occlusion of 1937, was not the cause of his death.

Appellant attacks these conclusions as speculative and claims that they will not support the finding of the pension trustees and the court, citing *Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351 [2 P.2d 142]; *Mark* v. *Industrial Acc. Com.*, 29 Cal.App.2d 495 [84 P.2d 1071]; and *Brant* v. *Retirement Board of S. F.*, 57 Cal.App.2d 721 [135 P.2d 396].

The Winthrop case is explained in *Nielsen* v. *Industrial Acc. Com.*, 220 Cal. 118, 122-123 [29 P.2d 852, 30 P.2d 995] and *Alaska Packers Assn.* v. *Industrial Acc. Com.*, 1 Cal.2d 250, 263-264 [34 P.2d 716]. The Mark and Brant cases are discussed in *Dornell* v. *Retirement Board,* 72 Cal.App.2d 197, 202-206 [164 P.2d 266]. The net result of these latter opinions is summed up in the Dornell case at page 206 (quoting from *Sales* v. *Bacigalupi,* 47 Cal.App.2d 82, 86 [117 P.2d 399]):

"The testimony of a medical witness in answer to a hypothetical question based on the facts in the record is sufficient to support a finding contrary to the testimony of other medical witnesses who have seen and examined the patient."

In our case there is no direct conflict in the testimony at all, since the testimony of Dr. Rogers is the only express testimony as to the cause of death. This testimony supports the finding above quoted; and the finding sufficiently disposes of the issue.

This conclusion renders it unnecessary to discuss the other question presented, as to whether appellant falls within the class of beneficiary mentioned in section 103a of the charter.

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.