[Civ. No. 7406.   Fourth Dist.   Dec. 11, 1964.]

WILLIAM   F.   LINDSAY,   Plaintiff   and   Appellant,   v.
   COUNTY   OF   SAN   DIEGO   RETIREMENT   BOARD,
   Defendant and Appellant.

Higgs, Fletcher & Mack and Norman R. Allenby for Plaintiff and Appellant.

Bertram McLees, Jr., County Counsel and Joseph Kase, Jr., Deputy County Counsel, for Defendant and Appellant.

GRIFFIN, P. J.—Upon the original hearing before respondent County of San Diego Retirement Board (hereinafter referred to as Board), it appeared that petitioner was employed by the County of San Diego as a deputy sheriff from 1949 to 1962; that petitioner suffered from a duodenal ulcer for approximately six years before his retirement; that following surgery petitioner developed a condition known as the dumping syndrome; and that petitioner had thereby become permanently incapacitated for the performance of his duties. The evidence of the causal relationship between petitioner's job and his condition consisted of three physicians' written reports. It appears that the remainder of the hearing consisted of petitioner's counsel's statement concerning petitioner's work habits, the nature of his employment, and the nature of

his operation, plus considerable speculation and opinions by some of the Board members concerning their own ulcers, heart attacks and the causes thereof.

Respondent Board retired petitioner for a nonservice-connected disability and ordered petitioner's application for service-connected disability denied. Petitioner and respondent Board appealed from the decision.

In this action in the superior court, petitioner sought a writ of mandate to review the proceedings before the respondent Board and to compel that Board to grant petitioner's service-connected disability retirement. The superior court found no abuse of discretion but ordered reconsideration by the Board. Petitioner's claim, on appeal, is that all of the evidence taken before the Board as to whether his injury was service-connected was in favor of the petitioner; that there was no evidence in conflict with it; and that the finding that the disability was nonservice-connected was not supported by the evidence.

Respondent Board contends on its appeal that in reviewing an administrative board's decision to determine whether the decision is supported by the evidence, it is error for the trial court to remand the matter back to the administrative board when the court finds no abuse of discretion; that since the findings of the Board imply that the evidence was susceptible of dual inferences, service-connected or nonservice-connected disability, the superior court resolved the inferences in favor of the Board's findings of nonservice-connected disability and hence the writ of mandate should have been denied.

On the hearing before the Board, the only witness sworn was petitioner. Practically all the evidence received consisted of the statements and arguments of counsel for petitioner and letters from three independent physicians as to the result of their examinations of petitioner and statements petitioner made to them. The testimony of the petitioner involved his particular duties as deputy sheriff and his physical suffering. It is conceded by all parties that petitioner's condition justifies the finding that he is now disabled and entitled to disability retirement. The dispute is whether the disability was service-connected.

Upon the original proceeding, it appears that one Dr. Goldfarb wrote that he had examined petitioner on May 1, 1961, and on July 27, 1962, and on the first occasion found that petitioner had a history of ulcer symptoms of six years' duration; that he had surgery on February 13, 1961, and that on May 1, 1961, petitioner had classic symptoms of dumping syn-

drome; that petitioner continued to work and his symptoms were worsened; that while working on the job of forgery detail he complained of nausea, cramps and nervousness, which aggravated his underlying symptoms; that he was operated on again by a Dr. Brown in February 1962 to try to correct this condition; that petitioner felt well for a short time thereafter but the symptoms returned and he lost over 50 pounds; that since he was off work his symptoms of tremors and nervousness have lessened but the nausea and bloating continue. The doctor concluded that petitioner's occupation as deputy sheriff "hastened and aggravated the course of his duodenal ulcer"; that in the several years prior to the original surgery, "the stress of his work aggravated the ulcer to the point that it became intractible [*sic*] to therapy." He then stated that it was his opinion that petitioner was incapacitated from performing his required duties by reason of "his industrial injury."

On June 28, 1962, Dr. Brown wrote that he had reoperated on petitioner for the dumping syndrome condition and that petitioner is permanently incapacitated physically to perform his duties as deputy sheriff and that "As to the exact cause of Mr. Lindsay's condition, I cannot say. I do feel, however, that his work as a Deputy Sheriff undoubtedly contributed to the formation of the ulcer which was the primary source of this man's difficulty."

A Dr. Morrison of the county staff wrote a letter dated July 26, 1962, and stated that he had examined petitioner at the request of respondent Board. He repeated the history of the two operations on petitioner. His opinion was that petitioner was "totally and permanently incapacitated." He gave no reason as to the probable cause of the ulcer.

The Government Code, County Employees Retirement Law of 1937, provides for retirement of such employees only if:

"(a) His incapacity is a result of injury or disease arising out of and in the course of his employment, or

"(b) He has completed 5 years of service." (Gov. Code, § 31720.)

"The board may require such proof, including a medical examination at the expense of the member, as it deems necessary or the board upon its own motion may order a medical examination to determine the existence of the disability." (Gov. Code, § 31723.)

"If the proof received, including any medical examination, shows to the satisfaction of the board that the member is per-

manently incapacitated physically or mentally for the performance of his duties in the service, it shall forthwith retire him for disability. . . ." (Gov. Code, § 31724.)

"Permanent incapacity for the performance of duty shall in all cases be determined by the board." (Gov. Code, § 31725.)

Petitioner contends that (1) the law requires the court to accept the medical testimony as conclusively establishing permanent incapacity and (2) the evidence not only supports but compels a finding that the permanent incapacity arose out of and in the course of employment. He relies upon a rule that the court is bound by expert testimony. (Citing such authority as *William Simpson C. Co.* v. *Industrial Acc. Com.*, 74 Cal.App. 239 [240 P. 58]; Witkin, Cal. Evidence (1958) § 199, p. 220; *Peters* v. *Sacramento City E. R. System*, 27 Cal.App.2d 10 [80 P.2d 179]; *Danielson* v. *Roche*, 109 Cal. App.2d 832 [241 P.2d 1028].)

The rule to be drawn from these decisions, as we understand them, appears to be that whenever the subject under consideration is one within the knowledge of experts only, and is not within the common knowledge of laymen, the expert evidence is conclusive upon the question in issue. In the *Simpson* case, *supra*, at pages 243 and 244, it was said that: "We seriously question, however, whether this rule can be extended to include the opinion of the medical men that the stroke of apoplexy preceded, and was the cause of the fall, under the facts in evidence before the Commission."

In *Liberty Mut. Ins. Co.* v *Industrial Acc. Com.*, 33 Cal.2d 89, 94 [199 P.2d 302], it was said: " 'When there is a conflict between scientific testimony and testimony as to facts, the jury or trial court must determine the relative weight of the evidence.' "

The question is: Was the doctor in a better position than the layman to determine which stresses and strains, those of employment, those of domestic strife (petitioner had been divorced by his wife and the custody of several children was involved), or just the daily stresses and strains any person undergoes, proximately caused the permanent incapacity? It is true that the burden of proving such conditions is on the petitioner, and the Board hearing the evidence is capable of exercising and must exercise its discretion on the evidence presented in determining the question of causal connection, i.e., whether or not the employment was the proximate cause of the permanent incapacity.

We cannot hold that the evidence compels a finding,

as a matter of law, that the permanent incapacity arose out of and in the course of petitioner's employment. The Board found that petitioner had not met the burden of establishing this fact to its satisfaction, and the trial court found: "That the medical reports . . . which were submitted as evidence by plaintiff to the Board of Retirement are on their face susceptible to two constructions, one construction being that the injury or disease arose out of and in the course of plaintiff's employment and the other being that the injury or disease did not arise out of and in the course of plaintiff's employment" and that in fact the evidence presented to the Board was insufficient to sustain plaintiff's burden of proof. These findings and conclusions have evidentiary support. One doctor stated he "could not say" as to the exact cause of petitioner's condition. The county doctor did not say. If the medical doctors could not say, it would appear that it was a question of fact for the Board to determine under all the evidence produced and inferences arising therefrom. (*Cooper* v. *Retirement Board*, 131 Cal.App.2d 804 [281 P.2d 349]; *Loveland* v. *City of Oakland*, 80 Cal.App.2d 31 [180 P.2d 937]; *Marshall* v. *City of Oakland*, 92 Cal.App.2d 593 [207 P.2d 882].)

It is apparent from the testimony that petitioner suffered from an ulcer which did not of itself disable him from performing his duties; but he underwent an operation which was unsuccessful, which then incapacitated him for the performance of his duties. It cannot therefore be said, as a matter of fact or law, that the ulcer alone did proximately cause the permanent incapacity. (*Flaherty* v. *Board of Retirement*, 198 Cal.App.2d 397 [18 Cal.Rptr. 256].) The retirement allowance for a service-connected disability retirement, unlike workmen's compensation benefits, is not apportionable. There is no presumption that because an injury occurs in the course of the employment it arises out of or is caused by that employment. (*G. L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587, 593 [200 P. 17].) In *California Shipbuilding Corp.* v. *Industrial Acc. Com.*, 27 Cal.2d 536, 541-542 [165 P.2d 669], it was said:

"Where the evidence is susceptible of conflicting inferences the finding of the commission, whether for or against the applicant, is final and it is our duty to uphold such finding." (Citing cases.) See also *Sweeney* v. *Industrial Acc. Com.*, 107 Cal.App.2d 155 [236 P.2d 651], as applying to medical testimony. A party having the burden of proof before an administrative agency must sustain that burden, and it is not

necessary for the agency to show the negative of the issue when the positive is not proved. (*Albonico* v. *Madera Irr. Dist.*, 53 Cal.2d 735 [3 Cal.Rptr. 343, 350 P.2d 95].) We conclude that the Board was justified in finding that the petitioner had not met the burden to establish the causal connection between his employment and his permanent incapacity.

█ The only question remaining is whether the trial court was justified in remanding the proceedings back to the respondent Board, under the findings made, and ordering it to set aside its order of August 8, 1962, denying petitioner's application for service-connected disability retirement benefits and to require further consideration of petitioner's application, in the light of the opinion of the court, and to take further action as is specifically enjoined upon said Board by law.

The trial court specifically found, from an examination of the record: "That the evidence before the Board of Retirement at the hearing consisted of hearsay, conclusions, and outside opinions not germane to the case.

"That during the course of the hearing and the presentation of evidence some of the members of the Board of Retirement expressed conclusions based upon their personal experiences.

"That the medical reports . . . which were submitted as evidence by plaintiff [petitioner] to the Board of Retirement are on their face susceptible to two constructions, one construction being that the injury or disease arose out of and in the course of plaintiff's employment and the other being that the injury or disease did not arise out of and in the course of plaintiff's employment."

The trial court further found: "That no evidence was presented to the Board of Retirement to show that either of the physicians who rendered these medical opinions had any knowledge of the duties performed by the plaintiff in the course of his employment."

A review of the record supports the conclusion apparently reached by the trial court that the evidence produced before the Board was almost completely hearsay. The only sworn testimony was that of petitioner, who testified generally as to his duties as deputy sheriff, that he had an ulcer, that an operation was necessary, and that the operation was not successful. Petitioner conceded that in his conversations with the doctors: "We never really discussed the cause of it. I just had an ulcer, and we were more interested in medication, trying to get it under control."

The statements made to the physicians by petitioner, as to

his duties and his injuries being of possible service-connection, were not made under oath. However, this is not required at such a hearing. The possible conclusion reached was that certain members of the Board were using their personal experience or were influenced by or used statements of certain members of the Board and were relying upon them to affect the reports of the doctors in reference to the ulcer being service-connected. One member, not under oath, stated: ''But I, too, had an ulcer, which was not caused from emotional distress; in fact, they don't know why it was caused.''

Another member stated: ''I am a little bit foggy at Mr. Allenby's presentation of proof in regard to this being a service-connected disability. I go along with the fact that it's a rather difficult situation to prove, but I'm very curious as to what facts he might have to prove that a man couldn't have had an ulcer regardless of pressures.

''With the descriptions of the performance of his duties for the total number of employees, over the years that we're covering here, by the County, I think you would find a very, very small percentage of them that would have ever been subjected to ulcers.

''In other words, what I'm trying to say is, he could have had ulcers regardless of whether he had done any of these things or not, and therefore, as far as the job is concerned it's questionable to me.

''I'm a little bit like Mr. Dickson. I retired in 1953 from a supposedly heart condition, and then in 1960 I wind up with a bleeding ulcer that I didn't know I had, and I had done nothing from 1953 to 1960 to be under any pressure, so personally, I'm having a hard time reconciling myself and [sic] the fact that a man couldn't have ulcers regardless of what kind of a job he was in. I think, therefore, that the service would have nothing to do with it.

''Now, on the other hand, it could have something to do with it.''

The chairman of the Board stated: ''But I don't think any of this—that you can't have an ulcer except through emotional stress; they say that nicotine, excessive nicotine causes cancer, but no doctor has ever said, 'I don't think that you can't have a cancer except through excessive nicotine.' ''

Another member said: ''. . . our doctor had not communicated to us that this is a service-connected illness, or the results of an attempted cure of a service-connected illness.''

Another member stated: "I think it was the result of the operation being unsuccessful."

In conclusion, the county counsel said that the Board: ". . . may wish to ask for further medical testimony, which the rules allow. . . ."

Both counsel agreed that if the Board desired further medical proof under oath bearing on the question as to the disability being service-connected, they would produce it. The chairman indicated that he would be "in favor of it" and later he said: "I don't think, personally, I would be interested in any further personal appearance."

Some questions followed as to the possibility of granting a rehearing if necessary to produce further medical testimony. Apparently a motion for rehearing was denied.

Considering the statement of the doctors and the opinions expressed by them as opposed to the personal experiences and expressions of the members of the Board as offsetting the opinions of the doctors, it might well appear that the trial court wanted a fair hearing on admissible testimony on the subject and believed the Board's own personal opinion in reference to ulcers being service-connected prevailed, and it accordingly disregarded the opinions expressed by the doctors. At any rate, to remove any doubt, another hearing and determination on the subject matter under proper evidence seems advisable. (Code Civ. Proc., § 1094.5.)

Judgment and order affirmed. Each party to bear own costs on appeal.

Coughlin, J., and Brown (Gerald), J., concurred.