[No. E012014. Fourth Dist., Div. Two. Jan. 19, 1995.]

DEBORAH MASTERS, Plaintiff and Appellant, v.
SAN BERNARDINO COUNTY EMPLOYEES RETIREMENT
ASSOCIATION et al., Defendants and Respondents.

COUNSEL

Lemaire, Faunce, Pingel & Singer and Steven R. Pingel for Plaintiff and Appellant.

White & Case, C. Randolph Fishburn and David J. Wilson for Defendants and Respondents.

OPINION

DABNEY, Acting P. J.—Plaintiff and appellant Deborah Masters (applicant) sued defendants San Bernardino County Employees Retirement Association (Association), the individual members of the Association's retirement board, the board's medical advisor and an administrator for the Association for alleged wrongful conduct in initially denying and failing to promptly award her a disability retirement pension. She alleged she was damaged in various ways by a delay of 19 months between the time she applied for and the time she was ultimately awarded the disability pension. The Association and the individual defendants demurred to applicant's complaint, asserting governmental immunity and other grounds. The trial court sustained the demurrer without leave to amend and entered judgment for the Association and the other defendants. Applicant appeals. We affirm in part.

## FACTS AND PROCEDURAL HISTORY[1]

██ On appeal after a demurrer is sustained without leave to amend, we deem all well-pleaded factual allegations of the complaint to be true. (*Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 496, fn. 2 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

Applicant was employed as a custodian/housekeeper at the San Bernardino County Medical Center and was a member of the Association. Applicant applied for a disability retirement pension on April 9, 1989, alleging she had suffered a back injury at work. Applicant alleged she submitted medical reports of Dr. Brodie, Dr. Heppenstall, Dr. Watkin, Dr. Lobley and Dr. Dean in support of her application.

The Association's administrator, Sylvia Miller, allegedly "caused to be withheld from consideration by the Association's Medical Advisor" the medical reports substantiating applicant's claim.[2] The medical adviser, without benefit of the reports and without himself examining applicant, reported to the board on August 23, 1989, that, although applicant was disabled, there was insufficient medical evidence to establish the service connection of the injury to applicant's employment.

---

[1]Pursuant to Evidence Code sections 452 and 459, the court takes judicial notice of the bylaws of the San Bernardino County Employees Retirement Association, adopted by the Board of Retirement (and by the San Bernardino County Board of Supervisors) pursuant to Government Code section 31525.

[2]Dr. Brodie wrote a report on June 30, 1988, before applicant had applied for disability retirement. Dr. Brodie apparently found applicant temporarily totally disabled from her job and recommended physiotherapy.

Dr. Dean wrote a report dated July 3, 1989, after applicant had applied for disability retirement but before any action on the application. Dr. Dean had examined applicant and found her precluded from heavy lifting or repetitive bending and stooping. He indicated the injuries were the result of her employment.

Dr. Heppenstall wrote a letter indicating he was treating applicant for lumbar spine strain and that he considered the injury occupational in origin. No date is indicated in the record for Dr. Heppenstall's letter, but it was evidently in response to (i.e., *after*) an inquiry from the board's medical adviser, Dr. Owen J. O'Connor.

Dr. Watkin made a report on October 25, 1989, *after* the date of the medical adviser's report to the board (Aug. 23, 1989), and after the date the board initially denied applicant's application (Sept. 7, 1989). Dr. Watkin opined that applicant was disabled from returning to work as a custodian and that he considered her a "qualified injured worker."

Dr. Lobley did not examine applicant or submit a report until July 11, 1990, after applicant's application had initially been denied, after reconsideration was denied, and after applicant filed for an administrative appeal. Indeed, it appears that Dr. Lobley's report was made specifically in contemplation of the administrative appeal hearing. Dr. Lobley reported that applicant was incapacitated from her job because she is unable to perform the bending, twisting, stooping, squatting, lifting, carrying, pushing and pulling required. Dr. Lobley noted

On September 7, 1989, "the defendants" denied applicant's application, on the ground of a lack of evidence of disability. Applicant alleged that, at that time, all the competent medical evidence clearly showed she was disabled and that the disability was service connected.

Applicant requested reconsideration of her application; the request was denied on November 2, 1989.

Applicant thereupon filed an administrative appeal from the decision denying her disability retirement. Defendants scheduled applicant for a medical evaluation by Dr. Lobely on June 18, 1990. Dr. Lobely reported on July 11, 1990, that applicant was disabled from her position. Applicant alleged defendants "did nothing" about Dr. Lobely's report, and that she had several times requested prompt action on her claim.

On September 19, 1990, a hearing on applicant's administrative appeal was held before a hearing officer. The report of Dr. Lobely and the other medical reports were all received in evidence at that time. Applicant asserts that all the medical reports "established the unanimous opinion of the doctors that [applicant] was disabled." On October 15, 1990, the hearing officer issued findings of fact, conclusions and a recommendation in the case, reporting that applicant was disabled and that applicant's claim "her employment contribut[ed] to her incapacity was both real and measurable and substantial. . . . Although she may have had some other predisposing factors nevertheless her condition was brought about and precipitated by her work activities." The hearing officer recommended that applicant's appeal be granted and that she be awarded a service-connected disability retirement, effective as of the day after her last regular compensation. The Association on November 1, 1990, adopted the hearing officer's report finding applicant entitled to a service-connected disability retirement. Applicant received her first disability pension check in early 1991.

Applicant thereafter sued the Association, Sylvia Miller, an administrator of the Association, Dr. Owen J. O'Connor, the medical adviser, and the nine

---

that applicant's condition was brought on in part by the stress of her obesity, but nevertheless concluded that applicant's employment was the precipitating cause of her disability.

At the administrative appeal hearing, applicant complained to the hearing officer that the board had made its initial decision that she was not permanently incapacitated without the opinions of Dr. Watkin or Dr. Dean.

Applicant's complaint is thus internally inconsistent with respect to the allegation that certain medical reports were "withheld" from the medical adviser; the complaint itself shows that several of the reports either were not in existence at the time of the medical adviser's evaluation, or that the medical adviser was in fact aware of the particular doctor's treatment of applicant. Applicant's complaint further admits that all the reports were available to and considered by the hearing officer at the time of the administrative appeal hearing.

individuals who were members of the Association's board of retirement, alleging causes of action for breach of fiduciary duty, promissory fraud, negligent misrepresentation, violation of federal due process rights under 42 United States Code section 1983, and intentional infliction of emotional distress.

The first cause of action, for breach of fiduciary duty, was apparently based on allegations that defendant Miller, the administrator, had "caused [applicant's medical reports] to be withheld from consideration" by the medical advisor, who, in the absence of applicant's medical evidence, apparently reported to the board that there was insufficient evidence of service-connected disability. Applicant further alleged the conclusion that the medical adviser "misrepresented the medical evidence concerning the causation of [applicant's] disability," although the complaint provides no allegations of fact to support or explain this conclusion.

Otherwise, the first cause of action simply details the progress of applicant's application, from submission in April 1989, through the report of the medical adviser (Aug. 23, 1989) and initial denial of her application (Sept. 7, 1989), to her requests for reconsideration (den. Nov. 2, 1989) and administrative appeal, culminating in a medical evaluation on June 18, 1990, in preparation for a hearing before a hearing officer (held Sept. 19, 1990) and ultimately an award of the disability pension on November 1, 1990. Applicant urged that defendants breached their fiduciary obligations in that they "failed . . . to act on the application within a reasonable time," and that they "failed . . . to act reasonably, and not arbitrarily, in considering the medical evidence concerning [applicant's] application."

Applicant asserted that she suffered damages consisting of (a) anger, frustration, humiliation, pain, emotional distress and mental anguish, (b) $8,000 in attorney fees to process her application, (c) denial of the use of disability pension funds for 20 months, (d) the cost of borrowing funds, diminishment of her credit rating, and payments for private medical insurance while the disability pension was denied, and (e) bankruptcy. Applicant further alleged defendants breached their fiduciary duties maliciously so as to entitle her to punitive damages.

The second cause of action, for promissory fraud, was based on allegations that defendants told applicant her application would be ruled upon fairly and within three to five months, but that these representations were false. Applicant urged that "Had defendants informed [her] that they take an unreasonable length of time to determine disability pension applications

and/or that they make determinations arbitrarily and capriciously, she could have obtained a private disability insurance policy to protect herself during the pendency of her application."

Applicant alleged a third cause of action against all defendants for asserted negligent misrepresentation, essentially repeating her allegations that defendants misrepresented that her application would be ruled upon fairly and within three to five months.

Applicant's fourth cause of action alleged defendants had violated her right to substantive due process by arbitrarily denying her application without a rational basis and then not reconsidering her application when "all of their information compelled only one conclusion—that [applicant] was entitled to a service-connected disability pension." Applicant further alleged defendants violated her right to procedural due process by unreasonably delaying action on her application. Applicant alleged that defendants' conduct deprived her of due process under the Fourteenth Amendment to the United States Constitution and of civil rights under 42 United States Code section 1983.

The fifth cause of action, for intentional infliction of emotional distress, alleged that, because defendants did not immediately award applicant a disability pension upon receiving Dr. Lobely's report on July 11, 1990, but required applicant "to undergo the emotional stress and expense of an administrative hearing" on September 19, 1990, defendants had acted outrageously and intentionally to cause applicant emotional distress.

The Association and the individual defendants demurred to applicant's complaint, on grounds of governmental immunity, failure to timely pursue administrative mandamus, existence of an adequate state law remedy for the alleged civil rights violations, and failure to state facts constituting a cause of action for violation of substantive or procedural due process rights.

The trial court sustained the demurrer without leave to amend on grounds that applicant "failed to timely file a petition for writ of administrative mandate pursuant to Code of Civil Procedure § 1094.5 and on the grounds that the Government Code gives all defendants immunity from liability for [applicant's] claims," and sustained the demurrer specifically with respect to the fourth (due process) cause of action "on the grounds that [applicant] cannot state a cause of action for denial of federal due process rights and on the grounds that [applicant] did not exhaust the available state remedies, including administrative mandate . . . ."

Applicant now appeals, contending the Association and the individual defendants are not immune for misconduct in the administration of the retirement system, and that administrative mandamus was not a proper remedy for the harm she suffered. Applicant further contends the demurrer was improperly sustained to her federal due process cause of action because a 19-month delay in receipt of benefits constitutes a deprivation of procedural due process and because arbitrary and capricious action by public employees deprived her of substantive due process; that is, the arbitrary denial of her application and failure to reconsider that decision before she filed an administrative appeal affected a fundamental right (to a disability retirement pension).

DISCUSSION

I. *Governmental Immunity*

A. *Individual Employees*

Government Code section 820 provides that public employees are liable to the same extent as private persons for injuries caused by their acts or omissions, unless a statute otherwise provides for immunity.[3] In this case, another statute *does* provide for immunity. Government Code section 820.2 states: "*Except as otherwise provided by statute,* a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, *whether or not such discretion be abused.*" (Italics added.) Moreover, Government Code section 822.2 states: "A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice."[4]

B. *Public Entity Liability*

Government Code section 815.2 provides in pertinent part that "(b) Except as otherwise provided by statute, a public entity is not liable for an injury

---

[3]Government Code section 820 provides: "(a) Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person. [¶] (b) The liability of a public employee established by this part (commencing with Section 814) is subject to any defenses that would be available to the public employee if he were a private person."

[4]Inexplicably, neither the parties nor the court below referred to or considered the express immunity for misrepresentation as to public employees (Gov. Code, § 822.2) or as to public entities (Gov. Code, § 818.8).

resulting from an act or omission of an employee of the public entity where the employee is immune from liability." In other words, if a public employee has discretionary immunity, the public entity employer is also immune.

Government Code section 818.8 provides that "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."

In addition, public entities are not liable for punitive damages. (Gov. Code, § 818.)

### C. *Application of Tort Claims Act Immunities to Complaint*[5]

### 1. *Causes of Action for Promissory Fraud and Negligent Misrepresentation.*

Applicant's causes of action for promissory fraud and negligent misrepresentation essentially alleged that public employees told applicant her application would be ruled upon fairly and within three to five months, and that applicant, relying on these allegedly false misrepresentations, did not protect herself economically by securing disability income insurance.[6]

Government Code section 822.2 expressly provides that a public employee is immune for negligent and intentional misrepresentation. The cause of action for negligent misrepresentation is clearly within the immunity and

---

[5]The trial court did not sustain the demurrer to the cause of action for violation of federal civil rights on the ground of governmental immunity, but rather on grounds of failure to state a claim and failure to exhaust available state remedies, including administrative mandamus. Accordingly, we apply state governmental immunity provisions only to the state law claims.

[6]To the extent either the promissory fraud cause of action or the negligent misrepresentation cause of action is predicated on the assertedly false representation that applicant would be awarded a disability pension if she were medically proven to be disabled within the meaning of the pension law, the allegation must fall with applicant's admission in the complaint that she was, in fact, given a disability pension.

Otherwise, we assume for purposes of this discussion that applicant's allegations are sufficient to state the elements of ordinary causes of action for fraud ((1) a false representation, concealment or nondisclosure, (2) knowledge of its falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) damage) (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778) or negligent misrepresentation ((1) representation as to a material fact, (2) representation is untrue, (3) regardless of actual belief, the defendant made the representation without a reasonable ground for believing it true, (4) intent to induce reliance, (5) justifiable reliance by plaintiff who does not know the representation is false, and (6) damage) (*Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 17-18 [147 Cal.Rptr. 655], disapproved on another point in *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 507 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763]).

cannot stand. The demurrer was properly sustained as to the individual employees on that cause of action.

The immunity provided by Government Code section 822.2 applies "unless [the public employee] is guilty of actual fraud, corruption or actual malice." Applicant has attempted to allege a cause of action for "promissory fraud." The question is whether the "promissory fraud" alleged amounts to the kind of "actual fraud, corruption or malice" for which liability may be imposed. We hold it does not.

Civil Code section 1566 provides that consent to a contract is voidable when obtained by, among other things, fraud. Civil Code section 1571 distinguishes between actual fraud and constructive fraud. Civil Code section 1572 defines five kinds of "actual fraud," including (1) intentional misrepresentation, (2) negligent misrepresentation, (3) suppression of fact, (4) a promise made without any intent to perform, and (5) "Any other act fitted to deceive."[7] Civil Code section 1572 is limited to acts committed by one party to a contract with intent to deceive another party to the contract or to induce someone to enter into a contract. Applicant was not induced by the purported fraud to enter into a contract. To the extent that applicant's retirement rights are based on contract,[8] the "fraud" could not have damaged her contract rights; applicant does not seek to rescind the contract and she admits that she was ultimately awarded a disability pension as of the last date of her regular compensation, the full amount to which applicant was entitled under the pension plan.

The common law tort of fraud (deceit) is embodied in Civil Code section 1709, and Civil Code section 1710 defines four kinds of actionable deceit, which parallel the provisions of Civil Code section 1572: (1) intentional misrepresentation ("The suggestion, as a fact, of that which is not true, by

---

[7]It is difficult to know what category of conduct this encompasses that is different from the kinds of fraudulent conduct already defined in Civil Code section 1572.

[8]Public employment in California is governed by statute, not by contract. (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 813-814 [135 Cal.Rptr. 386, 557 P.2d 970].) However, it has been stated in a case involving a county public employee retirement association, like that here, that "An employee who serves under a pension plan acquires a vested contractual right to a pension. (*Wallace* v. *City of Fresno* (1954) 42 Cal.2d 180, 183 [265 P.2d 884].) 'A pension plan offered by the employer and impliedly accepted by the employee by remaining in employment constitutes a contract between them, whether the plan is a public or a private one . . . . [Citations.] . . .' " (*Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 392 [216 Cal.Rptr. 733, 703 P.2d 73].) Thus, "[u]nlike other terms of public employment, which are wholly a matter of statute, pension rights are obligations protected by the contract clause of the federal and state Constitutions (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9). [Citations.]" (*United Firefighters of Los Angeles City* v. *City of Los Angeles* (1989) 210 Cal.App.3d 1095, 1102 [259 Cal.Rptr. 65].)

one who does not believe it to be true.") (Civ. Code, § 1710, subd. 1); (2) negligent misrepresentation ("The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.") (Civ. Code, § 1710, subd. 2); (3) concealment ("The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.") (Civ. Code, § 1710, subd. 3); and (4) failure to perform a promise (Civ. Code, § 1710, subd. 4).

If we were to interpret the term "actual fraud" in Government Code section 822.2 as coextensive with the meaning of "actual fraud" in Civil Code section 1572 or the parallel definitions of "deceit" in Civil Code section 1710, ". . . Government Code section 822.2 would be unintelligible. Inasmuch as both intentional and negligent misrepresentations are encompassed within the definition of 'actual fraud' pursuant to Civil Code sections 1710, subdivisions 1 and 2 and 1572, subdivisions 1 and 2, the statute would read, in essence: 'A public employee is not liable for his intentional or negligent misrepresentation unless he is guilty of intentional or negligent misrepresentation.' Such an interpretation would render the entire statute meaningless and the legislative purpose would clearly be defeated.

 "Accordingly, we hold that the immunity afforded by Government Code section 822.2 applies unless, in addition to the essentials of common law deceit, a public employee is motivated by corruption or actual malice, i.e., a conscious intent to deceive, vex, annoy or harm the injured party" (*Schonfeld* v. *City of Vallejo* (1975) 50 Cal.App.3d 401, 409-410 [123 Cal.Rptr. 669], overruled on another point in *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 743 [872 P.2d 143]) with respect to her financial dealings. We agree with the reasoning of the *Schonfeld* court and likewise hold that, in order to support a cause of action for fraud against the public employees, applicant must allege, in addition to the ordinary elements of common law deceit, motivation by corruption or actual malice. Applicant's complaint did not allege any such corruption or actual malice by any of the individual employees.[9] The demurrer was properly sustained as to the individual defendants on the ground of immunity.

 Although there is an exception to the immunity provided for public employees for misrepresentation—i.e., actual fraud, corruption or actual

---

[9]The only potential exception is Sylvia Miller, the administrator, as to whom applicant alleged Miller had "caused to be withheld from consideration" certain medical reports. The complaint does not clearly allege whether this conduct was accidental, negligent or intentional. Applicant should be permitted to amend her complaint, if she can allege the requisite facts, to show that Miller acted with actual malice or out of corruption.

malice—there is no such exception stated in the immunity provided to public entities for misrepresentations by their employees. That is, while a public employee's immunity is qualified, the immunity of a public entity for misrepresentation by its employee, whether intentional or negligent, is absolute. (Gov. Code, § 818.8; see *Harshbarger* v. *City of Colton* (1988) 197 Cal.App.3d 1335, 1340-1341 [243 Cal.Rptr. 463].) ▆ The Association is wholly immune as to the causes of action for fraud and negligent misrepresentation. The demurrer as to both causes of action was properly sustained as to the Association.

### 2. *Cause of Action for Breach of Fiduciary Duty.*

▆ Before we address the issue of discretionary immunity, we must first determine whether applicant has properly pled the existence of a fiduciary duty breached by defendants.[10] If defendants owed applicant no fiduciary duty of the kind she claims, our inquiry ends there and we need not reach the issue of immunity.

The court in *Hannon Engineering, Inc.* v. *Reim* (1981) 126 Cal.App.3d 415 [179 Cal.Rptr. 78], stated at page 425, "Pension plans create a trust relationship between pensioner-beneficiaries and trustees of pension funds who administer retirement benefits . . . and the trustees must exercise their *fiduciary trust* in good faith and must deal fairly with the pensioner-beneficiaries." (Citations omitted, original italics.) (*Ibid.*)

This language was repeated with approval in *Hittle* v. *Santa Barbara County Employees Retirement Assn.*, *supra*, 39 Cal.3d 374, 392, a case involving a county employees retirement association like that here. Thus, the *Hittle* court found a fiduciary duty of good faith and fair dealing: "The [retirement association] officers, by the acceptance of their appointment, are voluntary trustees, within the meaning of Civil Code sections 2216 and 2222, of the retirement plans available to the beneficiary-members of the

---

[10]Applicant argues that governmental immunities do not apply if there is a "special relationship" between the parties giving rise to a duty of care. Applicant has confused the issues. Where the defendant owes no duty of care, no cause of action can be stated, and the issue of immunity is irrelevant. If, because of a special relationship, a duty of care may be found which otherwise would not exist—in other words, if the plaintiff has stated a cause of action—it is then incumbent upon the court to determine whether any immunity applies. The existence of an alleged special relationship does not negate the applicability of immunity; rather, it simply defines whether there is a duty that has been breached. (See *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894] ["Conceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity."].)

Association. [Citation.] As such, the . . . officers are charged with the fiduciary relationship described in Civil Code section 2228: 'In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind.' " (*Id.* at pp. 392-393, fn. omitted.) In this vein, the court stated: " '[i]n the vast development of pensions in today's complex society, the numbers of pension funds and pensioners have multiplied, and most employees, upon retirement, now become entitled to pensions earned by years of service. We believe that courts must be vigilant in protecting the rights of the pensioner against powerful and distant administrators; the relationship should be one in which the administrator exercises toward the pensioner a fiduciary duty of good faith and fair dealing.' [Citation.]" (*Hittle v. Santa Barbara County Employees Retirement Assn.*, *supra*, 39 Cal.3d 374, 393.)

In *Hittle*, an employee was injured at work and could not return to work; the county employees retirement association provided him, after he stopped working, with a form indicating that he could either request a return of his retirement contributions or he could choose deferred retirement, an option for which he was not qualified. The employee requested return of his contributions (a mere $187.49), rather than requesting disability retirement (which would have provided him with an allowance of one-half pay for the rest of his life). Although the retirement association was on notice that the employee might meet the requirements for a disability retirement, its forms and letters did not fully advise the employee of all his retirement options, including disability retirement. The court held the association failed to meet the fiduciary obligation of good faith and fair dealing by failing to fully inform its members of their options in obtaining retirement benefits. (39 Cal.3d at p. 393, fn. 12.)

The law supports the allegation of a fiduciary duty owed to applicant, as a member of the retirement system, by the board members (who undertake by their acceptance of office to be voluntary trustees), and possibly by Miller as an administrator of the Association. Further facts need to be alleged as to Miller's position as "an administrator with [the] Association" (N.B., applicant has not alleged Miller was *the* administrator of the Association) to show whether she stands in a fiduciary relationship with the members of the retirement association, or whether she is merely a bureaucratic employee. Applicant should be granted leave to amend the first cause of action as to Miller to allege facts, if any there are, to establish a fiduciary relationship and consequent duty.

The medical adviser, on the other hand, is merely an employee of the Association. Although the medical advisor is a doctor, the function the medical adviser fulfills is simply to advise the board, to evaluate the medical evidence and to assist the board as it sees fit. There is no physician-patient relationship between the medical advisor and the employee, and the medical advisor does not undertake any treatment. The medical advisor does not stand in a fiduciary relationship with the applicant. The complaint fails to state a cause of action for breach of fiduciary duty against the medical advisor, as it fails to establish the existence of any such fiduciary duty. The trial court properly sustained the demurrer on the first cause of action as to the medical adviser, Dr. Owen J. O'Connor.

Assuming for purposes of further discussion here that applicant has or could possibly allege specific facts establishing the elements of a cause of action for breach of fiduciary duty against the board members or Miller, we next turn to the question whether the board members or Miller are immune for breach of the duty.

The trial court found that the board and Miller had discretionary immunity for the breaches alleged here.

The retirement board members are entrusted by statute with the exclusive authority to determine the factual issues whether a member is permanently incapacitated for duty (Gov. Code, § 31725) and whether the disability is service connected (cf. Gov. Code, §§ 31725.7, 31725.8). This is an adjudicatory function. (See *Tielsch* v. *City of Anaheim* (1984) 160 Cal.App.3d 570, 574 [206 Cal.Rptr. 738] [denial of police officer's application for disability retirement and decision to reassign him to a new position were adjudicatory, as contrasted to legislative, decisions].)

Adjudicatory decisions of administrative tribunals are a classic example of the kind of discretion vested in public officials which is intended to be immunized. In *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], the California Supreme Court construed the meaning of the language "in the exercise of . . . discretion" in Government Code section 820.2. The court rejected the distinction between "discretionary" and "ministerial" acts as a hopeless semantic quagmire, because virtually all acts of governmental employees involve some degree of choice. Instead, the court adopted a new formulation, based in part on the doctrine of separation of powers. That is, "immunity should attach to those decisions which involve 'basic policy' choices which, because they constitute an exercise of governmental administration, should ' "remain beyond the range

of judicial inquiry." ' (*Johnson, supra,* at p. 793, quoting 3 Davis, Administrative Law Treatise (1958) § 25.11, p. 484.) [¶] Elaborating on this thesis, the *Johnson* court stated: 'Courts and commentators have . . . centered their attention on an assurance of judicial abstention in areas in which the responsibility for *basic policy decisions* has been committed to coordinate branches of government. Any wider judicial review, we believe, would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to acoordinate branch of government. . . .' (*Johnson, supra,* 69 Cal.2d at p. 793, italics in original.)" (*Ronald S.* v. *County of San Diego* (1993) 16 Cal.App.4th 887, 896-897 [20 Cal.Rptr.2d 418].) Thus, the *Johnson* court distinguished between what it termed "basic policy" or "planning" decisions, on the one hand, and "operational" levels of decisionmaking, on the other. "The court speaks of 'areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule that courts will not entertain a *tort action* alleging that careless conduct contributed to the governmental decision.' ([*Johnson, supra,* 69 Cal.2d at p.] 794.)" (*Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 750 [84 Cal.Rptr. 257], italics added.)

Here, we are concerned with quasi-judicial determinations which have, by statute, been expressly entrusted to a coordinate branch of government. The members of the board, and no one else, are explicitly charged by statute with the responsibility to determine whether a member is incapacitated. (Gov. Code, § 31725.) The determination plainly calls for the exercise of judgment (i.e., discretion): "If the proof received, including any medical examination, shows *to the satisfaction of the board* that the member is permanently incapacitated," then the board shall retire the member. (Gov. Code, § 31724, italics added.) The board may decide what proofs and investigations are necessary. (Gov. Code, § 31723 [board "may" require such proof, including medical examination, "as it deems necessary" in order "to determine the existence of the disability"]; cf. also *Ronald S.* v. *County of San Diego, supra,* 16 Cal.App.4th 887, 897 [where social service workers investigate suitability of prospective adoptive parents, the *nature of the investigation to be conducted* and the ultimate determination of suitability "bear the hallmarks of uniquely discretionary activity"].) The applicant also bears the burden of proving that the disability is work-related. (*Lindsay* v. *County of San Diego Ret. Bd.* (1964) 231 Cal.App.2d 156, 160-161 [41 Cal.Rptr. 737].) The board's action is not a mere rubber stamp of applicant's application. We believe that areas of quasi-judicial (adjudicatory) decisionmaking which have been expressly entrusted to a coordinate branch of government are also

"sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision."[11] (*Connelly* v. *State of California, supra*, 3 Cal.App.3d 744, 750.) Applicant attempts to avoid this result by urging that the board could, in this case, only have interpreted the evidence, which she claims was uncontradicted, in one way and could have reached only one result: that she had proved her case and was entitled to the disability pension. She argues the board had no discretion to exercise, because, "If the member qualifies, the board *must* award a pension." (Italics in original.)

Applicant fails to grasp the implication of her statement. The critical point is that a disability pension shall be awarded *"If the member qualifies."* (Italics added.) That is a big "if." Indeed, Government Code section 31720 provides that a member of the retirement association shall be retired for disability "if, *and only if:* [¶] (a) The member's incapacity is a result of injury or disease arising out of and in the course of the member's employment and such employment contributes substantially to such incapacity." (Italics added.) Thus, it clearly appears that no member is simply "entitled" to a disability pension upon application and submission of a favorable doctor's report; the award of the disability pension depends upon proof, which varies from case to case, of the requisite qualifying facts. It is the board's job to "determine" whether sufficient proof has been made (Gov. Code, § 31725 ["Permanent incapacity for the performance of duty shall in all cases be determined by the board"]), and it must do so "to [its] satisfaction." (Gov. Code, § 31724.) The fact that some cases are (or, in applicant's mind, ought to be) more obvious than others does not change the nature of the task, which calls for the kind of discernment and judgment in evaluating evidence and reaching a conclusion, that is designed to be protected by the immunity statute.

We hold that the individual board members had discretionary immunity for their adjudicatory decisions on applicant's application for disability retirement.

With respect to Sylvia Miller, the administrator, the key allegation is that Miller "caused to be withheld from the medical advisor" certain medical reports. The medical advisor then rendered his opinion to the board (upon which it presumably acted) without benefit of all of applicant's evidence.

---

[11]Of course, public employees' discretionary decisions are not "immune" from all review for abuse of that discretion; an adjudicatory decision entrusted to another branch of government may still be subject to judicial review for abuse of discretion (see Code Civ. Proc., §§ 1085, 1094.5) without affecting the discretionary immunity provision. Rather, the immunity is for personal tort liability of the individual public employee for discretionary decisions undertaken as a public employee.

Assuming that applicant is alleging intentional, bad faith conduct,[12] the question is whether Miller has discretionary immunity for her act of "withholding" the medical evidence. Under the construct established by *Johnson v. State of California, supra,* 69 Cal.2d 782, public employees have immunity for policymaking or planning decisions, but not for operational decisions. The processing of an application for disability retirement is clearly of the lower-level, operational, category of decisionmaking. Government Code section 820.2 does not provide discretionary immunity for the administrator's decisions about how to handle the paperwork, including an applicant's medical evidence.[13] Certainly, no discretion is provided to suppress evidence intentionally. The trial court thus erred in finding discretionary immunity as

---

[12]Actually, the complaint is vague and uncertain on this point. The language "caused to be withheld" does not specify whether the "withheld" reports were misplaced, negligently overlooked, or intentionally suppressed. There are other problems with the complaint, including internal inconsistency (see fn. 1, *ante;* applicant alleges she submitted the medical reports of five doctors, and that Miller caused copies of medical reports corroborating her claim to be withheld, but materials incorporated by reference into the complaint show that some of the reports were not written until after the medical adviser rendered his opinion, or that the medical advisor himself solicited the report). Moreover, although applicant claims Miller caused the reports to be withheld from the medical adviser, she does not allege the reports were unavailable to or not considered by the board which made the decision. Indeed, at the hearing on applicant's administrative appeal, all the reports were presented and received into evidence. The complaint, as it stands, fails to state a cause of action for breach of fiduciary duty against Miller. Applicant may be able to amend the complaint to state additional facts, however, which would state a cause of action.

[13]A review of some of the cases discussing discretionary immunity, or relied upon in the lead case of *Johnson* v. *State of California, supra,* 69 Cal.2d 782, supports the conclusion that Miller here has no discretionary immunity under Government Code section 820.2. (See, e.g., *Johnson* itself) [decision whether to parole youth authority ward is discretionary and immune; failure to warn foster parents of ward's violent tendencies is not]; *Connelly* v. *State of California, supra,* 3 Cal.App.3d 744, 751 [decision to issue flood forecasts is discretionary; performance of forecasting job is not]; but see *Tokeshi* v. *State of California* (1990) 217 Cal.App.3d 999 [266 Cal.Rptr. 255], criticizing *Connelly* [immunity should apply because of action based on reliance on misinformation]; *Trewin* v. *State of California* (1984) 150 Cal.App.3d 975 [198 Cal.Rptr. 263, 41 A.L.R.4th 104] [Department of Motor Vehicles' (DMV) determination whether a person is fit to operate a motor vehicle is discretionary; once a driver is determined unfit, DMV has a mandatory duty not to issue license]; *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281, 290 [57 Cal.Rptr. 312] [decision whether to undertake botanical analysis is discretionary; once undertaken, the analyst may be liable for negligent chemical analysis]; *Toney* v. *State of California* (1976) 54 Cal.App.3d 779, 793 [126 Cal.Rptr. 869] [decision to issue press release about events on college campus is discretionary and immune; timing of a particular release and manner in which made are operational and not immune]; *United States* v. *State of Washington* (9th Cir. 1965) 351 F.2d 913, 916 [decision where to place wire across canyon assumed to be discretionary; failure to warn pilot is not]; *United Air Lines, Inc.* v. *Wiener* (9th Cir. 1964) 335 F.2d 379 [decision to conduct air flights is discretionary; failure to warn commercial airline is not]; *United States* v. *White* (9th Cir. 1954) 211 F.2d 79, 82 [decision not to "dedud" army firing range is assumed discretionary; telling persons going onto range that it is safe is not]; *Costley* v. *United States* (5th Cir. 1950) 181 F.2d 723, 724-725 [decision whether to admit patient to hospital is discretionary; no

to Miller, although, as it stands, applicant's complaint is presently insufficient to state a cause of action for breach of fiduciary duty as to her.

To the extent that the individual defendants have discretionary immunity, the Association is also immune. (Gov. Code, § 815.2.) The Association is therefore immune for any alleged breach of fiduciary duty as to the individual board members, but not as to Miller, provided that applicant can otherwise state a cause of action against Miller. The demurrer to the complaint as written was properly sustained, but leave to amend must be allowed to permit applicant an opportunity to state a claim against Miller and, vicariously, the Association.

### 3. *Cause of Action for Intentional Infliction of Emotional Distress.*

■ Again, before we reach any issue of immunity, we must examine the complaint to determine whether applicant has properly stated a cause of action for intentional infliction of emotional distress. The gravamen of applicant's cause of action is that, after the board received Dr. Lobely's report (ordered by the board after applicant filed her administrative appeal), the board did not simply reverse itself, but required applicant "to undergo the emotional stress and expense of an administrative hearing." Allegations that an administrative agency did not summarily reverse itself without hearing upon receipt of additional evidence, but instead held a regularly authorized administrative hearing, simply does not amount to outrageous conduct. Applicant failed to state a cause of action against any defendant for intentional infliction of emotional distress. The demurrer to this cause of action was properly sustained.

### II. *Untimeliness of State Claims*

■ The trial court sustained the demurrer to the state law claims not only on the ground of governmental immunity, but also on the ground of untimeliness. That is, the court held that review by writ of administrative mandamus was applicant's exclusive remedy for any abuse of discretion by the board and the other public employees (Code Civ. Proc., § 1094.5), and that she was required to file her petition within 90 days after the disputed administrative decision became final. (Code Civ. Proc., § 1094.6.) Inasmuch

---

immunity for treatment thereafter]; *Bulloch* v. *United States* (D.Utah 1955) 133 F.Supp. 885, 889 [decision as to how, when and in what manner to conduct nuclear tests is discretionary; failure to give notice is not]; *Hernandez* v. *United States* (D.Hawaii 1953) 112 F.Supp. 369, 371 [whether to erect roadblock is discretionary; failure to warn of hazard is not]; *Worley* v. *United States* (D.Ore. 1952) 119 F.Supp. 719, 721 [decision to use coyote traps assumed discretionary; failure to warn is not].)

as we have found that not all applicant's claims are barred by governmental immunity, we must now consider whether her claims were nevertheless untimely.

Code of Civil Procedure section 1094.5, administrative mandamus, is intended to "inquir[e] into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer . . . ." (Code Civ. Proc., § 1094.5, subd. (a).) Moreover, "The inquiry in such a case shall extend to the questions whether the [board] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the [board] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).) The only choice the court has in hearing a petition for writ of administrative mandate is to "enter judgment either commanding [the board] to set aside the order or decision, or denying the writ." (Code Civ. Proc., § 1094.5, subd. (f).)

Applicant here does not challenge the validity of the Association's final order awarding her a disability pension. She does not desire the court to command the board to set aside its decision. Administrative mandamus is inapplicable to applicant's claims. Even if she had sought administrative mandamus, moreover, the court would be wholly unable in that forum to award the kinds of damages (i.e., delay damages) applicant now seeks. The administrative review would encompass only the validity of the decision to award or not award the disability pension.

Applicant was not required to proceed by way of administrative mandamus; the 90-day time limit applicable to such petitions did not apply to the action here.

### III. *Federal Civil Rights Claims*

■ Applicant's complaint attempted to state a cause of action for violation of civil rights, consisting of a denial of both substantive and procedural due process. Applicant claims on appeal that an "unreasonable delay in providing fundamental benefits constitutes a denial of procedural due process." Applicant conceded below, however, that her complaint stated no cause of action for violation of procedural due process, and she did not oppose the demurrer to that portion of her civil rights cause of action. She is

bound by that concession and we do not consider the claim for violation of procedural due process on appeal.

We next consider applicant's cause of action for violation of *substantive* due process. Applicant alleges that defendants violated her substantive due process rights by "acting arbitrarily"; that is, by (1) initially denying her application, allegedly without a rational basis, and (2) not reconsidering her application when all the evidence before the board allegedly compelled the conclusion that applicant was entitled to a disability retirement. Inasmuch as the board ultimately did reconsider applicant's application and did in fact, as the complaint itself alleges, award applicant a full service-connected disability retirement, effective as of the date of her last regular pay, the claim that applicant has been denied a fundamental vested right is simply not true. Applicant can state no facts to overcome the fundamental fact that her vested right was vindicated. The complaint fails to state a cause of action for violation of substantive due process. The demurrer was properly sustained to that cause of action.

## DISPOSITION

The demurrer to the first cause of action, for breach of fiduciary duty, was properly sustained, but applicant should be allowed leave to amend the complaint as to defendant Sylvia Miller and defendant Association as vicariously liable for Miller's nonimmune conduct. The demurrer to the second cause of action, for fraud, was also properly sustained, but again applicant should be granted leave to amend as to defendant Miller if applicant is able to allege conduct amounting to corruption or actual malice. The demurrer to the third cause of action, for negligent misrepresentation, was properly sustained without leave to amend as defendants are immune for such alleged misrepresentations. The demurrer to the fourth cause of action, for violation of civil rights, was properly sustained without leave to amend. The demurrer to the fifth cause of action, for intentional infliction of emotional distress, was properly sustained without leave to amend.

The judgment of dismissal is therefore affirmed in part, as to all parties on the third, fourth and fifth causes of action, as to all parties except defendant Miller and defendant Association on the first cause of action, and as to all parties except Miller on the second cause of action. The judgment is reversed in part to allow applicant leave to amend her complaint to state causes of action against defendant Sylvia Miller and defendant Association (vicarious liability) for breach of fiduciary duty and to allow leave to amend as to Sylvia Miller alone on the cause of action for fraud.

The parties shall bear their own costs on appeal.

Hollenhorst J., and Bigelow J.,* concurred.

*Retired judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.