Filed 1/20/22  Webster Ave. Church of Christ v. Fire Prevention Services CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| WEBSTER AVENUE CHURCH OF CHRIST et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> FIRE PREVENTION SERVICES, INCORPORATED et al., <br><br> Defendants and Respondents. | D077678 <br><br><br> (Super. Ct. No. 37-2016-00010085-CU-BT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Reversed and remanded with directions.

Law Office of Nickolas A. Urick and Nick A. Urick for Plaintiffs and Appellants.

Law Office of J. Carlos Fox and J. Carlos Fox for Defendant and Respondent Fire Prevention Services, Inc.

Mara W. Elliott, City Attorney, George F. Schaefer, Assistant City Attorney and Tyler L. Krentz, Deputy City Attorney for Defendant and Respondent Marci Garcia.

Plaintiff and appellant Webster Avenue Church of Christ (Webster) and Otha Bill Brightmon appeal from a judgment entered in favor of defendants and respondents Fire Prevention Services, Incorporated (FPS) and Maria Garcia on their respective motions for judgment on the pleadings (JOP) and demurrer to plaintiffs' third amended complaint alleging causes of action for fraud, slander of title and defamation in connection with City of San Diego (City) weed abatement violation notices on Webster's properties. Plaintiffs alleged that Garcia, a City employee, had made false statements in connection with the notices and that FPS, City's contracted agent for weed abatement, likewise falsely claimed to have provided weed abatement, maliciously recorded liens, and sent a defamatory e-mail to an investigative news reporter. The trial court sustained Garcia's demurrer to plaintiffs' fraud claim on grounds plaintiffs did not state a cause of action; it granted FPS's motion for judgment on the pleadings in part on grounds plaintiffs did not exhaust their administrative remedies to challenge the notices and the statute of limitations barred their claim for slander of title.

Plaintiffs contend the court erred by granting judgment on the pleadings on exhaustion grounds assertedly raised by FPS for the first time in its reply papers below. Plaintiffs further contend the court misinterpreted the San Diego Municipal Code[1] in making its rulings, erroneously holding it required plaintiffs to appeal the abatement notices before they could object to its cost. As for their slander of title claim, plaintiffs contend the court erred by applying the doctrine of constructive notice to find that cause of action time-barred. They argue that cause of action was timely because it related back to their original complaint. As to Garcia, plaintiffs contend the court

---

[1] Further references to the Municipal Code are to the San Diego Municipal Code.

erred by ruling plaintiffs did not allege Garcia knew the weed abatement work orders she had created were false when she made them.

For the reasons discussed below, we conclude plaintiffs cannot allege a cause of action for fraud against either FPS or Garcia. However, we hold they should have been granted leave to amend to attempt to allege a timely slander of title cause of action against both defendants. We further hold the court should have denied judgment on the pleadings as to defamation against FPS.

## FACTUAL AND PROCEDURAL BACKGROUND

We state the facts from plaintiffs' operative verified third amended complaint. In so doing, we "accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law" and consider matters properly subject to judicial notice. (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 346 [demurrer]; *Smiley v. Citibank* (1995) 11 Cal.4th 138, 146 [same rules of review apply to demurrers and motions for judgment on the pleadings].)

*The Underlying Dispute*

Webster owns and operates several parcels of property in San Diego County, including four parcels that abut Leghorn Avenue (the Leghorn parcels) and three abutting 66th Street (the 66th Street parcels). The parcels are inaccessible to vehicle traffic due to a locked chain link fence. Webster compensates Brightmon to abate weeds on them. In June 2014, City, via FPS, sent Webster four notices of violation regarding a need to abate weeds on the Leghorn parcels. The notices state that "in order to comply, you are required to do the following: Cut and remove all grass and weeds to approximately two inches in height on flat parcels or parcels with a slope gradient up to 25 [percent]. Remove all tumbleweeds, rubbish, litter and

3

combustible debris from property." The notices cite to California Uniform Fire Code section 204.1.2, which states: "Weeds, grass, vines or other growth that is capable of being ignited and endangering property, shall be cut down and removed by the owner or occupant of the premises." Webster gave the notices to Brightmon to abate the weeds on the Leghorn parcels.

In early July 2014, Brightmon and his grandsons cut, raked, and removed all of the weeds from the Leghorn parcels and hauled the debris to the Miramar Landfill, paying $36 for the transaction. Brightmon then sprayed weed killer on all four parcels.

In October 2014, FPS sent four abatement notice and orders via certified mail for the Leghorn parcels. Those orders stated that "[a] representative of [FPS] inspected the [Leghorn parcels] on 10/20/2014." They instructed the recipient to "remove all weeds, combustible waste and rubbish from the surrounding yards and interior of the premises and clean the site within 10 calendar days of 10/20/2014." At the time, Brightmon was out of town attending a funeral. Upon his return, Webster gave Brightmon the abatement notices and orders to handle; but two Webster representatives who had inspected the Leghorn parcels told him there were no weeds to be abated.

Mistaking the notices to be for the 66th Street parcels, Brightmon in early November 2014, contacted E.V., a fire department representative listed on the notices, to request an extension. E.V. told Brightmon he would contact FPS to see if there was a pending work order. In late November, Brightmon and his grandsons cut weeds and removed tumbleweeds on the 66th Street parcels, loading the debris into his truck. Afterwards, Brightmon informed E.V. that he no longer needed the abatement extension. He paid $13 to the Miramar Landfill to dump the debris.

4

About that time, FPS sent Webster four bills dated November 25, 2014, for weed abatement on the Leghorn parcels. Webster gave the bills to Brightmon, who then contacted E.V. as well as Garcia, who Brightmon had dealt with in the past. On November 14, 2014, Garcia had executed four work authorization forms stating that on November 18, 2014, a crew "hand cut" the weeds on the Leghorn parcels. One of Garcia's family members was part of that crew, as Garcia had mentioned to Brightmon that a family member cut weeds as part of City's abatement program. On November 20, 2014, E.V. e-mailed an FPS representative, K.O., to say he had received a call that day from Brightmon. The e-mail continues: "I've been working with Mr. Brightmon for decades, and they've [sic] always complied. He is asking for an extension until December 10th, 2014. . . . Mr. Brightmon . . . was out of town for a family death in Texas . . . he actually called me before he left just to talk . . . ." E.V. also e-mailed K.O. on December 5, 2014, asking for an inspection history on the parcels, telling him that a Webster representative said the parcels were fenced and locked. K.O. replied that day with a timeline of FPS's activities on the Leghorn parcels and the dates it sent abatement notices and orders as well as bills.[2]

---

[2]     K.O. stated that all of the parcels were subject to the same timeline, which he listed as:
>4/24/2014 Annual weed abatement letter sent.
>5/13/2014 Properties were inspected and found in violation.
>6/16/2014 Notice of Violations were sent.
>10/20/2014 Parcels were inspected, found in violation and posted.
>10/20/2014 Abatement Notice and Orders were sent.
>10/31/2014 Property was reinspected and found still in violation.
>11/10/2014 received proof of service of Abatement Notice and Orders.
>11/14/2014 City signed abatement authorizations.
>11/18/2014 FPS[ ] crews abated properties.
>11/20/2014 Received e-mail from you.

After receiving no response from City, Brightmon contacted an investigative news reporter about the matter. The reporter interviewed Garcia and FPS, as well as Brightmon.

On December 29, 2014, FPS recorded liens against the Leghorn parcels.[3] Plaintiffs allege FPS has a history of problems, including overcharging for or not performing services and working as an unlicensed contractor. They allege FPS's contract with North County San Diego was terminated in 2004 due to customer complaints.

In January 2015, K.O. sent the reporter an e-mail with the same timeline of FPS's activities on the Leghorn parcels, writing that FPS crews had abated properties on November 18, 2014. K.O. stated he had no record of

---

11/21/2014 [D.K., another FPS representative] responded to your e-mail.

11/25/2014 sent abatement bills. K.O. noted: "Each parcel was sent individual notifications and there were 4 separate certified notices they signed for. Then [*sic*] never contacted us through the entire process."

[3] The notices of abatement, which FPS asked the court to judicially notice, state in passive language that a Municipal Code violation was determined to exist and was ordered abated on November 14, 2014; FPS as City representatives abated the violation on November 18, 2014; $1,395 was each abatement's charge; and until paid, an abatement obligation exists on the property regardless of the owner. The notice continues: "This abatement obligation shall attach to the property, not the owner, and after confirmation by the City shall become a special assessment on the property tax bill. If not paid pursuant to State Law and State Tax Lien Law, the property may be sold to satisfy that obligation. The amount of such claim shall be $1,395[ ] plus interest and other costs which may hereafter become due. This filing does not preclude the filing of legal action for collection. Should such actions be required or determined to be appropriate, reasonable legal fees will be incurred and added to said obligation." As plaintiffs point out, one of the notices was recorded on December 23, 2014, the rest were recorded on December 29, 2014.

Webster or Brightmon contacting FPS's office to discuss the bills or the work it had done.

In February 2015, the reporter e-mailed Brightmon to tell him that FPS and K.O. documented the weed cutting for each lot. He wrote: "If you can prove you and your grandsons actually did the work, that would make a great story."

At some point, Brightmon presented the e-mails to the Webster congregation. In August 2015, he obtained copies of the four liens recorded by FPS.

*Plaintiffs' Lawsuit*

Webster and Brightmon sued City and FPS in March 2016. They thereafter amended their complaint in response to demurrers.

In April 2018, plaintiffs filed a third amended complaint alleging causes of action for fraud and civil conspiracy against City, Garcia and FPS, slander of title and defamation against FPS, and negligent hiring/supervision against City. In part, Webster and Brightmon alleged that all of the defendants committed fraud when they asserted that FPS had performed abatement services; that FPS and Garcia created false work orders with knowingly false statements, including that FPS had "hand cut" or "fine cut" the weeds on the Leghorn parcels and left the debris in place in violation of laws or ordinances concerning weed abatement. Plaintiffs alleged Garcia did so "in direct response" to Brightmon telling E.V. in November 2014 that the parcels were fenced and locked, and the alleged fine cutting had not been performed by FPS before or after November 18, 2014. They alleged Garcia, who was operating under City's authority, conspired with FPS so as to protect her family member and was "motivated by corruption or actual malice" in making statements to the reporter and in taking other actions.

7

They alleged FPS maliciously recorded the liens against the Leghorn parcels, which clouded the title and injured them by hampering efforts to secure financing and develop the parcels. They alleged FPS's January 2015 e-mail to the reporter was false and defamatory on its face, and that e-mail, as well as the reporter's February 2015 e-mail to Brightmon, injured Brightmon, who "had a duty to re-publish" them to Webster and its congregation.

*Garcia's Demurrer*

Garcia demurred to the third amended complaint on grounds plaintiffs did not state a cause of action for fraud, the complaint was unintelligible, and the complaint failed to plead facts showing the claim was outside applicable public employee immunity. She argued the allegations did not establish she knew the work order authorizations were false when she executed them and, given plaintiffs' prior unsuccessful attempts to amend, the demurrer should be sustained without leave to amend.

In opposition, plaintiffs argued they showed Garcia knew the work orders were false when she executed them by allegations, among others, that she had a duty to review the scope of work for each work order before executing it; she operated under City's authority when she inspected the parcels on November 14, 2014; she would have noticed the Leghorn parcels did not require abatement on November 14, 2014; and she "executed the work orders knowing that the statements made therein were false, and thus motivated by corruption or actual malice, . . . in order to protect her alleged family member, who likely claimed compensation for the alleged work performed under the work orders." (Some capitalization omitted.) Plaintiffs argued Garcia was not immune to their conspiracy cause of action under *Klistoff v. Superior Court* (2007) 157 Cal.App.4th 469, and they showed Garcia actively participated in a conspiracy to commit fraud by specifically

8

alleging, inter alia, that Garcia conspired with FPS to hide the fact it did not perform the work by claiming FPS "hand cut" the weeds when confronted with information that the parcels were locked and gated, and "invented" the "fine cut" theory when plaintiffs asked for the disposal invoice. Plaintiffs argued they fell within an exception to the rule requiring fraud be pleaded with specificity when City and Garcia possessed the full information about the relevant communications.

*FPS's Motion for Judgment on the Pleadings*

FPS moved for judgment on the pleadings, arguing the operative complaint did not state any cause of action and statutes of limitations barred the causes of action for slander of title and defamation, depriving the trial court of jurisdiction. It argued the complaint's allegations showed plaintiffs knew FPS's bills were false because they knew the weeds had been abated, and thus they could not allege they justifiably relied to their detriment on the bills or the liens stemming from those bills. FPS argued the same points defeated plaintiffs' conspiracy allegations as the conspiracy was premised on fraud. FPS argued the three-year statute of limitations barred plaintiffs' slander of title claim, as plaintiffs had constructive notice of the recorded December 2014 liens' existence, or alternatively they knew or should have known of the liens no later than January 13, 2015, when they obtained the e-mail from FPS to the reporter. FPS further argued plaintiffs could not allege they suffered any actual pecuniary loss relating to its filing of the liens; that allegations that their bankers or other creditors were aware of the liens were insufficient. As for the defamation cause of action, FPS argued that claim, predicated on the January 13, 2015 e-mail directed to the reporter, was barred by the one-year statute of limitations. Additionally, they argued plaintiffs' complaint did not state a cause of action because the statement

9

that FPS abated the properties was not defamatory and Brightmon failed to plead special damages (damages to his property, business, trade, profession or occupation) caused by the statement.

Plaintiffs in opposition asked the court to rule the motion untimely due to FPS's failure to comply with local format rules. They argued the motion was procedurally defective for two additional reasons: because FPS had not met and conferred before filing the motion, and because the sole issue raised by FPS in prior similar motions as to fraud was the element of reliance, preventing FPS from raising new issues in the present motion. They argued multiple documents (the bills, work orders, and liens) comprised the fraud, and their complaint alleged Brightmon justifiably directly relied (and via him Webster indirectly relied) on E.V.'s representations that he would resolve or investigate the matter. As for defamation, plaintiffs argued the cause of action was timely under the discovery rule as they could plead that the reporter e-mailed his defamatory statements to Brightmon's ill wife, and then sent a package with the defamatory statements via regular mail to Brightmon, who then republished the statements to his congregation in April 2015. Plaintiffs argued the statements were defamatory as they implied that FPS, not Brightmon, performed the weed abatement on the Leghorn parcels. They argued the discovery rule likewise served to render their slander of title claim timely, as on August 17, 2015, Brightmon first received notice of FPS's liens at the county recorder's office, which liens were not properly served as required by the Municipal Code. They argued they alleged damages by stating that the liens had prevented them from developing the parcels and they had incurred in excess of $30,000 in prosecuting the matter. Plaintiffs requested the court take judicial notice of an October 20, 2014 abatement notice and order as well as November and December 2014 e-mails from E.V.

10

to FPS, and K.O. to E.V., regarding the timeline of FPS's inspection history and abatement.

In reply, FPS argued in part that Municipal Code sections 12.0501 and 12.0502 provide a property owner 10 days to appeal a notice of abatement and seek an administrative hearing, but plaintiffs failed to do so and thus waived their right to sue and a remedy.

The trial court sustained without leave to amend Garcia's demurrer and granted FPS's motion for judgment on the pleadings. Finding the premise of Garcia's demurrer was that plaintiffs did not allege she knew the work orders were false when she signed them on November 14, 2014, it ruled the gist of plaintiffs' claim was that Garcia fraudulently created the work orders after Brightmon suggested that the bills arising out of those work orders could not be accurate. The court found plaintiffs could not state a cause of action for fraud against Garcia because they alleged Brightmon made his assertion later, sometime after November 25, 2014.[4] The court denied leave to amend, rejecting plaintiffs' assertion at oral argument that Garcia had backdated the documents, which it ruled was speculation and

_____

[4] The trial court reasoned that the allegation Garcia knew on November 14, 2014, that the work orders were false "could not be accurate" given plaintiffs' additional contradictory allegation that Garcia created the work orders "in direct response" to Brightmon telling E.V. that vehicles could not enter the parcels. It found that since plaintiffs alleged Brightmon communicated with E.V. in December 2014, *after* Garcia allegedly created the work orders, plaintiffs could not state a cause of action for fraud against Garcia. But plaintiffs' theory also was that Garcia created false work orders so as to protect her family member abatement worker who would receive compensation from the abatement, and signed the work order authorizations having inspected the parcels, which would have revealed they did not need abatement. This theory, as we explain below, may support a slander of title cause of action.

11

contrary to their allegations, and observing the sole ground plaintiffs gave to seek leave to amend was their assertion that City was in possession of the information.

The court granted FPS's motion for judgment on the pleadings, rejecting plaintiffs' format and meet-and-confer challenges.[5] Stating it had permitted plaintiffs to file a surreply on the Municipal Code issues FPS raised in reply but that plaintiffs had not done so, it ruled the fraud claim was barred by plaintiffs' failure to exhaust administrative remedies in time to challenge the abatement notices and order. It ruled that while plaintiffs included a claim for conspiracy to commit fraud, they failed to allege facts indicating any party prevented them from appealing the abatement notices and orders. On plaintiffs' slander of title cause of action, the court ruled it was barred by the three-year statute of limitations because plaintiffs had constructive notice of the liens from their December 29, 2014 filing date, but did not include such a cause of action until April 27, 2018, when they filed their third amended complaint. The court granted plaintiffs leave to amend their defamation cause of action.

Plaintiffs did not file a fourth amended complaint. The court eventually entered a final judgment in the matter on December 4, 2019. Plaintiffs filed this appeal in May 2020.

## DISCUSSION

### I. *Standard of Review*

This court applies the same de novo review to the trial court's orders sustaining the demurrer and granting judgment on the pleadings, as both motions perform the same function. (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777; *Martinez v. San Diego*

---

[5] Plaintiffs do not repeat these challenges on appeal.

12

*County Credit Union* (2020) 50 Cal.App.5th 1048, 1058.) Giving the complaint a reasonable interpretation, reading it as a whole and its parts in context, we determine whether the complaint alleges facts sufficient to state a cause of action. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) We deem true all properly pleaded material facts, and disregard contentions, deductions or conclusions of fact or law. (*Harris*, at p. 777; *Zelig*, at p. 1126.) We consider facts of which a court may take judicial notice. (*Zelig*, at p. 1126.) When the trial court denies leave to amend, " 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Zelig*, at p. 1126; see also *SLPR, L.L.C. v. San Diego Unified Port District* (2020) 49 Cal.App.5th 284, 317 [demurrer].)

"If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer [or judgment on the pleadings]. '[W]e are not limited to plaintiffs' theory of recovery . . . .' " (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38.) " 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' " (*SLPR, L.L.C. v. San Diego Unified Port District, supra,* 49 Cal.App.5th at p. 317.)

## II. *Parties' Requests for Judicial Notice*

Plaintiffs and defendants both seek judicial notice of certain items in connection with this appeal.

A.  *Plaintiffs' Request*

Plaintiffs ask this court to take judicial notice of Municipal Code sections 11.0201 to 11.0210 (Ex. 1), 11.0301 to 11.0303 (Ex. 2), 12.0601 to 12.0614 (Ex. 3), 13.0201 to 13.0204 (Ex. 4) and 12.1001 to 12.1009 (Ex. 5) as official acts of the legislative department (Evid. Code, § 452 subd. (c)).  They argue exhibits 1 through 4 are relevant on the exhaustion issue; specifically whether Municipal Code section 13.0302 required them to appeal under Municipal Code section 12.0501 before an abatement cost hearing to preserve their challenge.  They argue Municipal Code section 13.0203 is relevant to show their slander of title claim is not stale because it assertedly requires recorded liens to be served on landowners by specified methods, which City did not do.  They argue Municipal Code sections 11.0201 through 11.0210 are relevant because they define the phrases "may" and "shall."

FPS has not opposed the request.  We grant it.  (See Evid. Code, §§ 452, subd. (b) [judicial notice may be taken of "[r]egulations and legislative enactments issued by or under the authority of . . . any public entity in the United States"], 200 [a " '[p]ublic entity' " includes a city].)

B.  *FPS and Garcia's Request*

FPS and Garcia jointly ask this court to take judicial notice of February 15, 2019 and May 22, 2019 docket entries (register of actions Nos. 269 and 277) reflecting judgment entered in their favor and against plaintiffs, and a "Notice of Ruling" prepared by FPS's attorney stating that the court had entered judgment on February 15, 2019, as noted on the register of actions. An accompanying declaration by Garcia's counsel states that the documents relate to the timing of this appeal, which Garcia challenges in her respondent's brief.

14

According to Garcia, the first docket entry (which she references as a "text only docket entry") constitutes a final judgment that resolved all claims against her and FPS. She argues that because plaintiffs did not perfect an appeal within 180 days of February 15, 2019, the appeal is untimely and must be dismissed.

We deny the request. Though we may take judicial notice of the register of actions itself pursuant to Evidence Code sections 452, subdivision (d) and 459, subdivision (a) (*RGC Gaslamp*, *LLC v. Ehmcke Sheet Metal Co.*, *Inc.* (2020) 56 Cal.App.5th 413, 418), the register having both docket entries is already contained in the clerk's transcript on appeal, rendering judicial notice unnecessary. (Accord, *ibid*.) As for the May 2019 notice of ruling, though it is a court record, it does not appear to have been before or considered by the trial court when it entered a final judgment in the matter on December 4, 2019. Even if that were not the case, Garcia's request would have us accept the truth of the assertions made in these items, which we are unable to do. " 'Although the *existence* of a document may be judicially noticeable, the truth of statements contained in the document and its proper interpretation are not subject to judicial notice if those matters are reasonably disputable.' " (*Unruh-Hazton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 364-365; accord, *StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9; *Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 83, fn. 4.) In its December 4, 2019 final judgment, the court observed that Garcia's demurrer and FPS's motion for judgment on the pleadings had been ruled upon in August 2018, but it did not refer to any judgment entered on those matters in February

15

2019. On this record, whether the court in fact entered judgment in February 2019 for Garcia and FPS is subject to reasonable dispute.[6]

### III. *FPS's Motion for Judgment on the Pleadings*

A. *Plaintiffs' Fraud Cause of Action*

1. *Exhaustion of Administrative Remedies*

Plaintiffs challenge the court's ruling concerning exhaustion of administrative remedies both on procedural and substantive grounds. They first contend the court erred by granting judgment on the pleadings on the exhaustion grounds raised by FPS because FPS did not raise the argument in its initial motion papers below, but "ambush[ed]" plaintiffs with that argument in its reply papers. Plaintiffs acknowledge that the trial court stated in its order that it had permitted them to file a surreply, but they maintain they were never served with any such order and did not know why the court had continued the hearing on the matter even after having consulted with City and the court clerk, and examined the register of actions. Substantively, they contend the court improperly inserted conditional language into the relevant Municipal Code section, and ignored other

---

[6] Given these conclusions, we reject Garcia's argument about the timeliness of plaintiffs' appeal. Plaintiffs served notice of entry of the December 4, 2019 judgment on February 27, 2020, triggering the 60-day appeal period per California Rules of Court, rule 8.104(a)(1)(B). Because the 60-day deadline fell within a period covered by a Covid-19-related order applying to deadlines occurring between April 19, 2020, to and including May 18, 2020 (see April 15, 2020 Implementation Order for the Renewed Order Pursuant to Rule 8.66 of the California Rules of Court at <https://www.sdcourt.ca.gov/sites/default/files/sdcourt/generalinformation/covid-19info>), the deadline to file an appeal was extended until May 27, 2020. Plaintiffs timely filed their notice of appeal on May 27, 2020. We accordingly informed the parties on September 28, 2020, that the appeal of the December 4, 2019 judgment as to FPS and Garcia could proceed but dismissed the appeal as to City as untimely.

16

mandatory language giving them an opportunity to challenge the abatement costs. They further contend the court ignored a provision stating that the Municipal Codes were not the exclusive remedy to address a code violation, and as a result it erred by concluding they had failed to exhaust administrative remedies.

In response, FPS asserts plaintiffs' opposition to its motion was filed late. Even if a late filing justified disregarding the opposition papers, it would not be dispositive of plaintiffs' appeal. A trial court's order sustaining a demurrer without leave to amend is reviewable for abuse of discretion even though no request to amend is made. (Code Civ. Proc., § 472c, subd. (a); *Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 144-145; *Mercury Ins. County. v. Pearson* (2008) 169 Cal.App.4th 1064, 1072.) And a plaintiff can make a showing how amendments would cure defects for the first time on appeal. (*Smith*, at p. 145.) FPS's other arguments relating to exhaustion are made without required citation to any authority or reasoned legal argument, entitling us to disregard them.[7] (Cal. Rules of Court, rule 8.204(a)(l)(B); *State Farm General Insurance Company v. Lara* (2021) 71

---

[7] FPS cites no authority for its arguments that failure to exhaust administrative remedies divests the superior court of jurisdiction and that plaintiffs failed to pursue any civil remedy for what amounts to a small claims action within Municipal Code time limits, which FPS does not detail. Many of FPS's other responsive arguments are made without citation to authority. These include FPS's arguments that this court should strike plaintiffs' slander of title cause of action because Code of Civil Procedure section 472 required plaintiffs to seek leave of court to add this cause of action but they did not; plaintiffs' failure to make an offer of proof as to when Webster first received notice of the recorded liens requires us to infer that they seek to mislead this court; and plaintiffs' failure to file an amended complaint within 10 days after the trial court granted leave to amend bars them from bringing their now "moribund" defamation claim.

17

Cal.App.5th 197, 225; *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1004.)

On the procedural issue, we apply a presumption that the trial court or court clerk "regularly performed" official duties, including by serving all parties entitled to notice. (Evid. Code, § 664; *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 575 [Evid. Code, § 664 presumption applies to actions of trial judges]; see *In re Linda D.* (1970) 3 Cal.App.3d 567, 571 [presumption applies to court clerk's duty to serve all persons entitled to notice].) The presumption is rebuttable; "its effect is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (*Gee v. California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 718; Evid. Code, § 606.) The presumption may be dispelled when the record affirmatively shows a failure to apply the requisite standards. (*In re Hare* (2010) 189 Cal.App.4th 1278, 1292 [presumption is rebutted when irregularity is clearly shown].) Plaintiffs here point to the trial court's minute order continuing the motion hearing and permitting plaintiffs to file a surreply by a certain date, and the absence of a proof of service of that order appearing in the record. They point to their counsel's argument at the continued hearing on the matter in which he explained he neither learned of the order granting the opportunity for a surreply even after contacting the City as well as the clerk, who directed counsel to the register of actions, nor did he see the substance of the order in the register of actions.

We cannot say that counsel's unsworn argument and the absence of a proof of service in the appellate record amount to " 'affirmative evidence[ ] that official standards were in any respect not observed' " or permit " 'a reasonable basis for an inference that the procedures were not properly followed.' " (*Delgado v. California Department of Motor Vehicles* (2020) 50

18

Cal.App.5th 572, 577.)  Notably, while counsel objected to the court's consideration of the exhaustion issue during oral argument on FPS's motion, he addressed the merits of the matter and did not seek a further continuance to present additional argument.  We conclude the trial court did not err by addressing the exhaustion of remedies argument FPS raised for the first time in reply.  Nor does it appear plaintiffs were prejudiced by the court's consideration of the issue, which they have addressed on appeal.

We proceed to the exhaustion of remedies argument.  The administrative exhaustion doctrine bars a judicial remedy by a person to whom administrative remedies were available but who failed to properly invoke those remedies in the administrative process.  (See *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321.)  If an administrative remedy is provided by statute or ordinance, " ' "relief must be sought from the administrative body and this remedy exhausted before the courts will act." [Citation.]  The rule is a jurisdictional prerequisite in the sense that it "is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts . . . and binding upon all courts." ' " (*Clews Land & Livestock, LLC v. City of San Diego* (2017) 19 Cal.App.5th 161, 184.)  "For example, if the administrative proceeding includes a right to appeal an allegedly improper action, a plaintiff must generally pursue that administrative appeal in order to exhaust his or her administrative remedies. ' "If some reasonable administrative remedy, such as the right to appeal the action of a planning commission, were afforded to challenge such improper action the doctrine of administrative remedies would bar suit by litigants who failed to employ it." ' " (*Ibid*.)  The purpose of the doctrine is to promote judicial economy and afford due respect to the administrative process.  (See *Campbell*, at p. 322; *Sierra Club v. San Joaquin Local Agency Formation*

19

*Com.* (1999) 21 Cal.4th 489, 501; *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 748.) " 'Even when the administrative remedy may not resolve all issues or provide the precise relief requested by a plaintiff, the exhaustion doctrine is still viewed with favor "because it facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency." ' " (*Sierra Club v. San Joaquin Local Agency Formation Com.*, at p. 501.)

Whether a party has exhausted administrative remedies in a given case depends on the procedures applicable to the public agency in question. (*Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 591; see *Park Area Neighbors v. Town of Fairfax* (1994) 29 Cal.App.4th 1442, 1450.) A party who fails to appeal an administrative action "in the manner prescribed by the town code" has failed to exhaust administrative remedies. (*Park Area*, at p. 1450; see *Clews Land & Livestock, LLC v. City of San Diego*, *supra*, 19 Cal.App.5th at p. 187.)

Here, plaintiffs allege City served Webster by certified mail four abatement notices and orders for the Leghorn parcels, which stated that the parcels were inspected and needed abatement. City's administrative process permits a responsible person served with such a notice to appeal it in writing within 10 calendar days after service. (Mun. Code, § 12.0501, subd. (a)(1).) The appeal triggers appointment of an administrative enforcement hearing officer and a hearing, which if the appellant fails to attend results in a waiver of the appellant's rights to a hearing and an adjudication of the notice or any portion thereof. (Mun. Code, §§ 12.0501, subd. (c), 12.0503.) This appeal process for plaintiffs was a "jurisdictional prerequisite" to resorting to the superior court to challenge the abatement notices and orders. (*Sierra Club v. San Joaquin Local Agency Formation Com.*, *supra*, 21 Cal.4th at p. 501;

20

*Clews Land & Livestock, LLC v. City of San Diego*, *supra*, 19 Cal.App.5th at p. 184.)

But plaintiffs' fraud claim is not limited to the notices of abatement. Plaintiffs allege that FPS, which assertedly had a documented history of charging for work it did not perform, committed fraud by issuing false work orders and bills claiming it performed the abatement, in conjunction with Garcia, who was alleged to be acting in the interest of her abatement-worker family member. They allege that FPS recorded liens against the Leghorn parcels based on the false documents, causing them injury. The Municipal Code contains separate provisions addressing procedures for City's recovery of costs of abatement. (Mun. Code, §§ 13.0301 [Procedures for Recovering Costs of Abatement], 13.0302 [Confirmation of Costs Hearing].) They operate after the City has abated a public nuisance or has incurred abatement costs before a responsible person voluntarily abates a nuisance. In that event, a "confirmation of costs" hearing is mandatory unless waived in writing by the responsible person: "[T]he Director *shall* request the City Manager to schedule a confirmation of costs hearing in accordance with the administrative enforcement hearing procedures set forth in Division 4, Article 2 of Chapter 1." (Mun. Code, §§ 13.0302, subd. (a), 12.0608, subd. (e) ["The Director *shall* request the City Manager to schedule a confirmation of costs hearing pursuant to Section 13.0302 of this Chapter, unless waived in writing by all Responsible Persons"], italics added.) The responsible person "shall" be served with a notice of the hearing as well as a copy of a "report describing the work performed and an itemized account of the total abatement costs prepared pursuant to Section 12.0606 of this Chapter . . . ." (Mun. Code., § 13.0302, subds. (b), (c).) Scope of review is limited to the Director's report describing the work performed and itemized account,

"together with any objections to its accuracy" and the hearing officer "may make such revisions, corrections or modifications in the report or the account as may be just and reasonable." (Mun. Code, § 13.0302, subd. (d).) Further, "[a]t the confirmation of costs hearing, the Enforcement Hearing Officer shall not consider evidence regarding the merits of the previous abatement hearing or review the decision ordering the administrative or summary abatement." (Mun. Code, § 13.0302, subd. (f).) The officer's decision confirming or modifying the amount of costs is final. (Mun. Code, § 13.0302, subd. (g).)

We see nothing in the pertinent code provisions requiring a responsible person to first challenge a notice of abatement and order to preserve a separate challenge to City's claimed costs of abatement. Though plaintiffs' complaint alleges facts showing they did not exhaust administrative remedies with regard to the notices of abatement, there are no allegations that they were served with notice of a confirmation of costs hearing and report from which they could challenge the scope of the abatement work and its itemized account of costs. Absent an indication City complied with its administrative process to confirm or verify its costs before FPS recorded the nuisance abatement liens, plaintiffs could have alleged they were excused from any exhaustion requirement as to the scope and costs of abatement that they maintain underlies the alleged fraud. (Accord, *KCSFV I, LLC v. Florin County Water Dist.* (2021) 64 Cal.App.5th 1015, 1038 [plaintiffs were excused from exhausting administrative remedies where agency did not comply with procedural requirements, including notice, in the applicable procedure].)

2. *Plaintiffs Cannot State a Fraud Cause of Action In Any Event*

We must nevertheless examine the operative complaint and decide independently whether plaintiffs' allegations state a cause of action for fraud. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors*

22

(2010) 48 Cal.4th 32, 42.) We accept as true all facts that may be implied or inferred from those expressly alleged. (*Schmidt v. City and County of San Francisco* (2021) 60 Cal.App.5th 470, 481.)

"California law generally recognizes four forms of deceit: intentional misrepresentation, negligent misrepresentation, concealment, and failure to perform a promise." (*Finch Aerospace Corp. v. City of San Diego* (2017) 8 Cal.App.5th 1248, 1252.) " ' " 'The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " ' " (*Borman v. Brown* (2021) 59 Cal.App.5th 1048, 1060-1061, quoting *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974.)[8] Fraud must be pleaded with specificity; general and conclusory allegations do not suffice. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.)

In its motion for judgment on the pleadings, FPS argued that plaintiffs could not state the element of justifiable reliance on the assertedly false bills or liens because they had alleged they knew the bills and ensuing liens were false. "In a fraud case, justifiable reliance is the same as causation, thus '[a]ctual reliance occurs when a misrepresentation is " 'an immediate cause of [plaintiffs'] conduct, which alters his legal relations,' " and when, absent such representation, the plaintiff[s] ' " 'would not, in all reasonable probability,

_____

[8] The elements of negligent misrepresentation are "(1) representation as to a material fact, (2) representation is untrue, (3) regardless of actual belief, the defendant made the representation without a reasonable ground for believing it true, (4) intent to induce reliance, (5) justifiable reliance by plaintiff who does not know the representation is false, and (6) damage." (*Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 40, fn. 6.)

have entered into the contract or other transaction.' " ' " (*Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 855, fn. 2, quoting *Engalla v. Permanente Medical Group, Inc.*, *supra*, 15 Cal.4th at p. 976; *Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 807, disapproved on other grounds in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 337.)

Here, plaintiffs allege Brightmon cut the weeds on the Leghorn parcels and photographed his truck taking the weeds to the dump, such that the "photographic evidence of the Leghorn Parcels does not support [FPS's false statement that it fine cut the weeds]." They allege Brightmon told the City representative, E.V., "that FPS could not have abated the weeds on the parcels because there is a chain-link fence and locked gate that would prevent vehicles from entering the parcels." (Some capitalization omitted.) Though plaintiffs allege Webster justifiably relied on Brightmon and Brightmon justifiably relied on E.V. to resolve issues regarding the bills and work orders, the alleged fraud is not a statement from either Brightmon or E.V. Under the circumstances and plaintiffs' own knowledge of the alleged falsity of FPS's work orders and bills, we agree plaintiffs cannot state reliance upon any representation by FPS. (Accord*, Buckland v. Threshold Enterprises, Ltd.*, *supra*, 155 Cal.App.4th at pp. 808-809 [where plaintiff conceded she suspected packaging and marketing was false or misleading but purchased the product anyway solely to pursue litigation, she "lacked the requisite confidence in the truth and material completeness of their representations, and cannot establish actual reliance for the purpose of her fraud claims"]; *Carter v. Seaboard Finance Co.* (1949) 33 Cal.2d 564, 570 [where plaintiff did not rely upon a defendant's statements of fact but instead made an independent examination that satisfies him, there can be no

24

actionable fraud].) In short, the trial court did not err by granting judgment on the pleadings on plaintiffs' fraud cause of action.

Our conclusion means the court properly entered judgment on the pleadings on plaintiffs' conspiracy to commit fraud theory. "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511; see also *Klistoff v. Superior Court, supra*, 157 Cal.App.4th at p. 479.) "The act done and resulting damage to the plaintiff, not the conspiracy to act, is the essence of civil conspiracy." (*Klistoff*, at p. 479.) " '[I]n order to state a cause of action based upon a conspiracy theory the plaintiff must allege the formation and operation of the conspiracy, the wrongful act or acts done pursuant to it, and the damage resulting from such acts. [Citation.] In making such allegations bare legal conclusions, inferences, generalities, presumptions, and conclusions are insufficient.' " (*State of California ex rel. Metz v. CCC Information Services, Inc*. (2007) 149 Cal.App.4th 402, 419.) Because plaintiffs are unable to state a cause of action for fraud, they necessarily cannot state a claim based on a conspiracy to commit fraud. (*McMartin v. Children's Institute International* (1989) 212 Cal.App.3d 1393, 1406 [conspiracy "cannot be alleged as a tort separate from the underlying wrong it is organized to achieve"]; *Applied Equipment Corp., supra*, 7 Cal.4th 503, 510-511 [civil conspiracy does not give rise to a cause of action unless a civil wrong has been committed resulting in damage].)

B. *Slander of Title*

Slander of title is not a form of deceit, but a form of the separate common law tort of disparagement, sometimes referred to as injurious

falsehood. (*Finch Aerospace Corp. v. City of San Diego*, *supra*, 8 Cal.App.5th at p. 1253.) Consequently, the immunities in Government Code sections 818.8 and 822.2 do not apply to it. (*Ibid*.) To state a claim for slander of title, a plaintiff must allege " '(1) a publication, (2) which is without privilege or justification,' (3) which is false, and (4) which 'causes direct and immediate pecuniary loss.' " (*Schep v. Capital One*, *N.A.* (2017) 12 Cal.App.5th 1331, 1336; *Manhattan Loft*, *LLC v. Mercury Liquors*, *Inc.* (2009) 173 Cal.App.4th 1040, 1051.) The statute of limitations for slander of title is three years. (Code Civ. Proc., § 338, subd. (g).)

The record reflects, and plaintiffs by their relation-back arguments concede, they first included their slander of title cause of action in the third amended complaint, which was filed more three years from the recording of FPS's December 2014 liens, but within three years from the August 2015 date that Brightmon alleged he obtained copies of the liens. This court has held that the doctrine of constructive notice does not apply to slander of title, and the equitable discovery rule will toll the statute of limitations for such a claim. (*Arthur v. Davis* (1981) 126 Cal.App.3d 684, 691, fn. 6 [constructive notice is designed to inform prospective purchasers and mortgagees regarding the status of title; a rule otherwise would require property owners to periodically check official records to insure the statute of limitations on slander of title had not run], 692 ["Given the close relationship between defamation actions and an action for slander of title [citation] and the eminently practical policy underlying the [equitable] discovery rule [citation], we see no reason why it should not apply to slander of title actions as well"].) But when a cause of action would be barred by the statute of limitations without the discovery rule, plaintiffs " 'must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made

26

earlier discovery despite reasonable diligence.' " (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808.)  Plaintiffs bear the burden of showing diligence; conclusory allegations will not survive a demurrer.  (*Ibid.*)

Plaintiffs contend there is no statute of limitations issue because FPS did not properly serve the liens on them and thus did not provide actual notice of those recorded documents.  Relying on *Arthur v. Davis*, *supra*, 126 Cal.App.3d 684, they argue the applicable rule is not whether the recording imparted constructive notice, but whether they could reasonably be expected to discover the liens and the existence of their slander of title cause of action. Plaintiffs further contend their slander of title cause of action relates back to at least their second amended complaint filed in November 2017, as the cause of action relies on the same facts as those alleged in their fraud cause of action.  Thus, plaintiffs maintain, the new cause of action is not subject to the statute of limitations.

1. *Relation-back*

"An amended complaint is considered a new action for purposes of the statute of limitations only if the claims do not 'relate back' to an earlier, timely-filed complaint.  Under the relation back doctrine, claims of an amended complaint will relate back to the original complaint for purposes of the statute of limitations where, inter alia, they rest on the same set of general facts, involve the same injury, and refer to the same instrumentality. [Citations.]  An amended complaint relates back to an earlier complaint if it is based on the same general set of facts, even if the plaintiff alleges a different legal theory or new cause of action.  [Citations.]  However, the doctrine will not apply if the '. . . plaintiff seeks by amendment to recover upon a set of facts entirely unrelated to those pleaded in the original complaint.' " (*Pointe San Diego Residential Community L.P. v. Procopio,*

*Cory*, *Hargreaves & Savitch*, *LLP* (2011) 195 Cal.App.4th 265, 276-277 (*Pointe*); see *San Diego Gas & Elec. Co. v. Superior Court* (2007) 146 Cal.App.4th 1545, 1549-1550.)

"In determining whether the amended complaint alleges facts that are sufficiently similar to those alleged in the original complaint, the critical inquiry is whether the defendant had adequate notice of the claim based on the original pleading. 'The policy behind statutes of limitations is to put defendants on notice of the need to defend against a claim in time to prepare a fair defense on the merits. This policy is satisfied when recovery under an amended complaint is sought on the same basic set of facts as the original pleading.' " (*Pointe, supra*, 195 Cal.App.4th at p. 277.) "Additionally, in applying the relation-back analysis, courts should consider the 'strong policy in this state that cases should be decided on their merits.' " (*Ibid*.)

The record in this case does not contain plaintiffs' original, first, or second amended complaints, preventing us from fully comparing the factual allegations in the original and amended complaints. (*Scholes v. Lambirth Trucking Co.* (2017) 10 Cal.App.5th 590, 598 [relation-back doctrine requires appellate court to compare factual allegations in the original and amended complaints].) Plaintiffs point to their recitation of several paragraphs of their original complaint in opposition to FPS's motion to strike, which is contained in the appellate record. In those paragraphs, plaintiffs allege FPS made knowingly false statements that they cut weeds on Webster's parcels, Webster justifiably relied on the statements when it gave FPS's November 2014 bills to Brightmon to remedy, Brightmon relied on FPS and City to correct the mistake, but plaintiffs were harmed when FPS and City refused to do so and recorded liens on the parcels. Plaintiffs further point to the trial court's tentative ruling sustaining FPS's demurrer to plaintiffs' second

amended complaint, which states: "Plaintiffs also allege in the [second amended complaint] that FPS made a false statement when it recorded liens against the Leghorn Parcels." Defendants do not challenge the existence of these allegations or the accuracy of the court's ruling.

Under the foregoing principles, and particularly the strong policy that cases should be decided on the merits, we conclude the slander of title cause of action rests on the same basic set of facts as the original pleading, that is, FPS's assertedly false claims that it abated Webster's properties and its issuance of bills, resulting in the later recording of liens on the properties. The new legal theory—that these false liens or notices clouded the properties' title—does not change the essential facts in the pleadings. Under these circumstances, defendants had adequate notice of the nature of the claim based on the original and later amended pleadings. (*Pointe*, *supra*, 195 Cal.App.4th at p. 277; *Scholes v. Lambirth Truck Co.*, *supra*, 10 Cal.App.5th at p. 599.)

2. *Leave to Amend*

Given our conclusion above we need not decide whether the statute of limitations bars plaintiffs' slander of title cause of action. Were we to address it however, we would conclude plaintiffs should have been allowed leave to amend their cause of action to include allegations that might render that claim timely.

Plaintiffs' third amended complaint alleges that FPS sent Webster bills dated November 24, 2014, for weed abatement, and Webster gave the bills to Brightmon who contacted City. They allege FPS recorded liens based on those bills the following month in December 2014, but Brightmon did not obtain copies of those liens until August 2015. Plaintiffs do not include allegations as to the manner of Brightmon's discovery or why his discovery of

29

the December 2014 liens was delayed, much less why the delay was reasonable. They include no allegations concerning discovery or knowledge of the liens by the properties' owner, Webster. They do not allege why they were unable, despite reasonable diligence, to discover the liens earlier. (*Fox v. Ethicon Endo–Surgery, Inc., supra*, 35 Cal.4th at p. 808.) The specific pleading requirement is important where the alleged slander is contained in a publicly recorded document. Plaintiffs would not meet their burden absent such details.

We are still obligated to decide whether there is a possibility of an amendment that will overcome the statute of limitations. Normally, it is plaintiffs' burden to show in what manner they can amend their complaint and how that amendment will change the legal effect of their pleading. (See *HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 513, fn. 3.) And such a showing may be made for the first time on appeal. (*Smith v. BP Lubricants USA Inc., supra*, 64 Cal.App.5th at pp. 144-145.) As stated, plaintiffs first asserted this claim in their third amended complaint, as to which the court granted judgment on the pleadings without leave to amend. Because the court did not give plaintiffs an opportunity to amend this cause of action, the question becomes whether the complaint shows on its face that it is incapable of amendment. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747 ["[L]eave to amend is properly granted where resolution of . . . legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations"].) In such instances, "leave to amend is liberally allowed as a matter of fairness . . . ." (*Ibid.*; *JPMorgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th 678, 684.) " 'Denial of leave to amend is appropriate only when it conclusively appears that there is no possibility of alleging facts

30

under which recovery can be obtained.'" (*Eghtesad v. State Farm General Insurance Company* (2020) 51 Cal.App.5th 406, 411, 412.)

Plaintiffs argue that while FPS recorded the liens, it did not actually give plaintiffs notice of them before recordation or serve a copy of the recorded notices as required by Municipal Code sections 13.0203, subdivisions (b) and (f).[9] They argue Brightmon discovered the liens on August 17, 2015, when he obtained them from the San Diego County Recorder. These circumstances do not foreclose the possibility of alleging facts showing plaintiffs reasonably could not have discovered the recorded liens until August 2015. They should be given an opportunity to amend to attempt to state a timely claim under the discovery rule.

---

[9]    Municipal Code section 13.0203, subdivision (b), which is within Division 2 concerning Code Enforcement Liens, provides: "Before recordation, the Director shall provide to the Responsible Person a written notice informing him or her that a Code Enforcement Lien will be recorded unless the City receives full payment for the outstanding amount of civil penalties, costs and fees within the time period prescribed in the notice. Payment shall be due a minimum of ten (10) calendar days from the date of the mailing." Subdivision (f) of the same section provides: "A copy of the recorded Code Enforcement Lien shall be served upon the Responsible Person by one of the methods of service set forth in Section 11.0301 of this Code." Municipal Code section 11.0301 permits several different methods of service when notice is given under the code for enforcement purposes. (Mun. Code, § 11.0301, subd. (a).) Notice "shall be served by any of the following methods unless different provisions are otherwise specifically stated to apply: "(1) Personal service; or [¶] (2) Certified mail, postage prepaid, return receipt requested. Simultaneously, the same notice may be sent by regular mail. If a notice that is sent by certified mail is returned unsigned, then service shall be deemed effective pursuant to regular mail, provided the notice that was sent by regular mail is not returned. [¶] (3) Posting the notice conspicuously on or in front of the property. The form of the posted notice shall be approved by the City Manager." (Muni. Code, § 11.0301, subd. (a).) The Municipal Code defines "shall" to mean "mandatory." (Muni. Code, § 11.0209, subd. (b).)

C. *Defamation Cause of Action*

"Libel is a false and unprivileged publication by writing, . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, § 45; *Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1283.) A libelous statement is not actionable until it has been published to a third person, generally by the defendant. (*Tilkey v. Allstate Insurance Company* (2020) 56 Cal.App.5th 521, 541; *Live Oak*, at p. 1284.) A plaintiff cannot manufacture a defamation claim by publishing the statements himself to another person. (*Live Oak*, at p. 1284.) "There is an exception 'when it [is] foreseeable that the defendant's act would result in [a plaintiff's] publication to a third person.' [Citation.] For the exception to apply, the defamed party must operate under a strong compulsion to republish the defamatory statement, and the circumstances creating the compulsion must be known to the originator of the statement at the time he or she makes it to the defamed individual." (*Tilkey*, at pp. 541-542.) "The originator of the statement is liable for the foreseeable repetition because of the causal link between the originator and the presumed damage to the plaintiff's reputation [citation], but the publication must be foreseeable." (*Id.* at p. 542.) The exception applies in a narrow class of cases, such as where derogatory statements are made in a personnel file, which compels the employee to explain the statement to subsequent employers, or made in a worker's certificate that is required by regulation to be presented to prospective employers, or made in a credit report of a person who is required to explain the statement to obtain credit. (*Live Oak*, at p. 1285.) In these kinds of cases, a plaintiff usually republishes the statements "in aid of disproving them." (*Ibid.*)

32

The one-year statute of limitations applicable to actions for libel runs from the utterance or publication of the defamatory matter. (Code Civ. Proc., §§ 335, 340; *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 932; *Roger v. County of Riverside* (2020) 44 Cal.App.5th 510, 523.) " '[P]ublication occurs when the defendant communicates the defamatory statement to a person other than the person being defamed.' [Citation.] However, in circumstances where a reasonably diligent plaintiff could not have been expected to know about the publication (for example, because it was contained in a personnel file), the accrual date tolls until the plaintiff discovers or reasonably should have discovered the publication." (*Roger v. County of Riverside*, at pp. 523-524.)

FPS's motion for judgment on the pleadings argued that plaintiffs' defamation cause of action was barred by the one-year statute of limitations, and failed to state a claim both because the statement that FPS crews abated the properties was not defamatory, and Brightmon failed to plead damage to his property, business, trade, profession or occupation stemming from the statement, which was allegedly communicated by FPS's representative K.O. only to the news reporter.

On appeal, plaintiffs contend they adequately alleged (or can adequately allege) facts showing Brightmon did not receive the e-mails, which were sent electronically to his wife, until the reporter mailed them to

33

him, rendering the claim timely under the discovery rule.[10] They contend Brightmon had a strong compulsion to republish the January 2015 defamatory e-mail to Webster, which paid Brightmon to abate its properties. Pointing to allegations in a proposed fourth amended complaint, they contend they can allege Brightmon sat on a budget/finance committee at Webster and after the reporter sent him the package with the statement, he republished it at the next April 2015 committee meeting. They also contend Brightmon had a duty to republish as well because Webster paid him for services that FPS said he did not perform.

Plaintiffs' operative complaint alleges that Brightmon received compensation from Webster to abate the parcels, and that the fire department representative E.V. suggested this to FPS's representative K.O. in November 2014 when he mentioned via e-mail that Brightmon "takes care of the Webster Ave. Church of Christ vacant lots . . . ." Plaintiffs allege that in January 2015, K.O. e-mailed the reporter, who had interviewed Garcia and

---

10    As to the statute of limitations, FPS says the defamatory statements occurred on January 13, 2015, and "Brightmon, in his deposition, stated in a sworn response to an interrogatory that he first learned of the statements on February 25, 2015." The record citation for this proposition however, is an e-mail from FPS's counsel to plaintiffs' counsel purporting to recite Brightmon's response to an interrogatory ("**February 25, 2015**[,] when [the reporter] published the [K.O.] (FPS) e[-]mails to Brightmon and Brightmon per his duty re-published with Webster Ave.") Plaintiffs' counsel's e-mail reply explained, "That was the date of the e[-]mail itself, but not the date received and opened and thus no knowledge as of that date. [¶] The e[-]mail was sent to Mrs. Brightmon, not [plaintiff], who has no e[-]mail account." Counsel stated Brightmon's wife was very ill at the time and not checking e[-]mail. He stated he would send supporting medical evidence of that fact. FPS does not address plaintiffs' ability to allege a timely claim under the discovery issue, and we conclude they demonstrated they can allege facts showing Brightmon did not learn of the defamatory statements until within one year of March 2016, when plaintiffs filed their original complaint.

FPS, in response to his investigation of FPS concerning the Leghorn parcels. K.O.'s allegedly defamatory e-mail stated that FPS had abated the properties, suggesting Brightmon had not done so. A statement that implies a false assertion of fact tending to injure a plaintiff's reputation can be actionable defamation. (See *Balla v. Hall* (2021) 59 Cal.App.5th 652, 677-678.) Under the circumstances, it is reasonable to infer FPS knew when its representative e-mailed the reporter with the statement, that Brightmon would be compelled to republish it to Webster "in aid of disproving" the statement so as to protect his reputation with Webster and its congregation. (*Live Oak Publishing Co. v. Cohagan*, *supra*, 234 Cal.App.3d at p. 1285; *Burdette v. Carrier Corp.* (2008) 158 Cal.App.4th 1668, 1685 ["Defamation is an injury to reputation"], citing *Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1242.) In sum, we conclude the court erred by granting judgment on the pleadings on plaintiffs' defamation claim.

### IV. *Garcia's Demurrer to the Fraud Cause of Action*

Plaintiffs allege that Garcia is a City employee and also related to a weed abatement worker. A public employee such as Garcia who acts within the scope of her employment is not liable for an injury caused by a negligent or intentional misrepresentation "unless [she] is guilty of actual fraud, corruption or actual malice." (Gov. Code, § 822.2.) Courts have assumed Government Code section 822.2 immunity applies to all four forms of deceit. (*Finch Aerospace Corp. v. City of San Diego*, *supra*, 8 Cal.App.5th at p. 1253.)

" ' "[T]he immunity afforded by Government Code section 822.2 applies unless, in addition to the essentials of common law deceit, a public employee is motivated by corruption or actual malice, i.e., a conscious intent to deceive, vex, annoy or harm the injured party[ ]' [citation] with respect to [his or] her financial dealings.' " [¶] ". . . [C]onclusory allegations of corruption or malice

35

[are not] sufficient to bring a fraud action within the exception of Government Code section 822.2. In addition to facts establishing the ordinary elements of common law deceit, the pleader also must allege *facts* showing that the fraud was motivated by corruption or actual malice." (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 649 [allegations that "representations, false promises and concealments were done 'for corrupt purposes and/or with malice towards plaintiffs and their interests' and that defendants' conduct 'was intended . . . to cause injury to plaintiffs or constituted despicable conduct which was carried on by defendants, and each of them, with a willful and conscious disregard of the rights of plaintiffs' " were insufficient to survive a demurrer].)

In their operative complaint, plaintiffs allege Garcia inspected the properties and executed the work orders on November 14, 2019, knowing the statements within them were false "in order to protect her alleged family member, who likely claimed compensation for the alleged work performed under the work orders." (Some capitalization, fn. omitted.) They allege that she was "in concert with FPS, and thus motivated by corruption or actual malice, in violation of [Government Code section] 822.2, as upon an inspection of the Leghorn Parcels on November 14, 2014, she would have noticed that the Leghorn Parcels did not require abatement" and on review of the scope of work she "would have known that FPS'[s] alleged fine cutting was in violation of the notices, statutes, ordinances, and contract." They allege Garcia was acting in concert with FPS and similarly motivated when she made statements to the news reporter that FPS (a) entered the Leghorn parcels by foot; (b) abated the parcels by hand tools; and (c) fine cut the debris and left it on the parcels "in known violation of the notices, statutes, and ordinances concerning weed abatement." Plaintiffs allege that as a

36

direct result, they suffered damages in that FPS recorded liens against the Leghorn parcels on December 29, 2014, and they had to hire an attorney to represent their interests.

Many of plaintiffs' allegations, including that Garcia was "motivated by corruption or actual malice," are legal conclusions and argument, and we disregard those. (*Curcini v. County of Alameda*, *supra*, 164 Cal.App.4th at p. 649.) But accepting the foregoing factual allegations and liberally construing them on our de novo review, we conclude they sufficiently allege a purposeful and corrupt motivation on Garcia's part to falsify documents to benefit her family member at plaintiffs' expense. These are allegations amounting to a "conscious intent to deceive, vex, annoy or harm" (*ibid*) plaintiffs and their financial interests for purposes of overcoming Government Code section 822.2 immunity. (Accord, *Masters v. San Bernardino County Employees Retirement Assn.*, *supra*, 32 Cal.App.4th at p. 42 & fn. 9 [allegations that county plan administrator withheld medical reports to prevent plaintiff's eligibility for disability pension may state exception to Government Code section 822.2 immunity]; *Golden West Baseball Company v. Talley* (1991) 232 Cal.App.3d 1294, 1304 ["actual fraud" requires intent to deceive], disapproved on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 526-527.)

Our conclusion that plaintiffs alleged Garcia was motivated by corruption is not enough to survive the demurrer, because plaintiffs must also allege fraud. (Accord, *Curcini v. County of Alameda*, *supra*, 164 Cal.App.4th at p. 649 [public employee must be motivated by corruption or actual malice "in addition to the essentials of common law deceit"].) As we have explained in connection with FPS's motion for judgment on the pleadings, plaintiffs cannot allege reliance on any false representation by Garcia as to FPS's abatement work because the allegations indicate plaintiffs

37

knew that FPS's statements were untrue, and thus could not have justifiably relied upon them. The same conclusion applies to Garcia's assertedly false work orders representing that FPS hand cut or fine cut the parcels.

We still must decide whether plaintiffs can state a valid cause of action under any theory supported by the allegations. They allege they were damaged by the placement of liens on their properties arising from the false work orders and bills, clouding their title and hampering their efforts to secure financing and develop the parcels. Such allegations, taken as true, could state a cause of action for slander of title against Garcia, which is not subject to Government Code section 822.2 immunity (*Finch Aerospace Corp. v. City of San Diego*, *supra*, 8 Cal.App.5th at p. 1253), or conspiracy to commit slander of title. Plaintiffs should be granted an opportunity to amend their complaint to attempt to state such causes of action.

## DISPOSITION

The order granting FPS's motion for judgment on the pleadings and sustaining Garcia's demurrer without leave to amend is reversed. The trial court is directed to issue a new order (1) granting FPS's motion as to fraud, denying the motion as to plaintiffs' defamation claim, but granting plaintiffs leave to amend their cause of action for slander of title and (2) sustaining Garcia's demurrer to the fraud cause of action, but granting leave to amend to attempt to state a cause of action for slander of title/conspiracy to commit slander of title. The parties shall bear their own costs on appeal.


O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


GUERRERO, J.