Filed 1/17/25  In re J.B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re J.B., a Person Coming Under the Juvenile Court Law. | |
| | D084596 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J521040) |
| Plaintiff and Respondent, | |
| v. | |
| C.C., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief County Counsel and Evangelina Woo, Senior Deputy County Counsel, for Plaintiff and Respondent.

Appellant C.C. (Mother) challenges the juvenile court's order terminating parental rights to her child, J.B. (Child). Child, who was 12 at the time, was removed from Mother's custody after suffering physical abuse by Mother and sexual abuse by Mother's boyfriend. "[W]hile intoxicated, . . . [M]other blamed the child for the sexual abuse inflicted on . . . [C]hild by [M]other's boyfriend," and Mother "slapped and hit . . . [C]hild multiple times in the face and neck area, and hit . . . [C]hild's left arm multiple times while . . . [C]hild was trying to block being hit in the face resulting in . . . [C]hild having a contusion of the nose and a closed head injury." Mother "ha[d] a long history of alcohol abuse and according to [Child], this was not the first time her mother ha[d] hit her and called her names."

Attempts at reunification failed and, following a Welfare and Institutions Code[2] section 366.26 hearing, the court found by clear and convincing evidence that Child would be adopted and terminated Mother's parental rights. The court designated Child's caregiver, a paternal aunt (Aunt), as her prospective adoptive parent.

Mother first argues the court abused its discretion by failing to order a tribal customary adoption (TCA) in lieu of terminating parental rights. (§ 366.26, subd. (c)(1)(B)(vi)(II).) However, TCA is only an alternative to termination if the tribe "has identified" TCA as a permanent plan for the child. (*Ibid.*) Child's tribe, Navajo Nation (the Tribe), did not recommend TCA, but rather supported the proposed adoption by Aunt. We conclude

---

[1]    We resolve this case by memorandum opinion because it "raise[s] no substantial issues of law or fact." (Cal. Stds. Jud. Admin., § 8.1.)

[2]    Undesignated references are to the Welfare and Institutions Code.

Mother has not shown any error with respect to this issue.

Second, Mother argues the court abused its discretion by failing to find an exception to termination because there is a beneficial relationship between Mother and Child. (§ 366.26, subd. (c)(1)(B)(i).) We find Mother has conceded that one element of this exception does not apply, forfeited arguments with respect to a second, and has not shown any error with respect to the third.

We find no reversible error as to either issue and, accordingly, affirm.

1.      *Tribal Customary Adoption*

"If the [juvenile] court determines . . . by a clear and convincing standard[] that it is likely [a] child will be adopted, the court shall terminate parental rights and order the child placed for adoption." (§ 366.26, subd. (c)(1).) However, the court may decline to terminate parental rights if, when faced with a case involving a Native American youth, it "finds a compelling reason for determining that termination would be detrimental to the child" because "[t]he child's tribe has identified . . . tribal customary adoption . . . for the child." (§ 366.26, subd. (c)(1)(B)(vi)(II).) "TCA is the preferred permanent plan for an Indian child *if the child's tribe recommends TCA*." (*In re N.S.* (2020) 55 Cal.App.5th 816, 841.)

The record reflects that Child's Tribe has not identified TCA as a permanent plan for Child. An April 2024 Addendum to the section 366.26 Report by the San Diego Health and Human Services Agency (Agency) reflects that the assigned social worker communicated with Child's tribal social worker over the course of several weeks, noting that the two "discussed the permanent plan options" and, in turn, the tribal social worker discussed the options with her supervisors. The tribal social worker informally "confirmed that the [T]ribe is recommending a traditional adoption and not a

Tribal Customary Adoption," then subsequently emailed a "final recommendation" stating, "at this time, the Navajo Nation Indian Child Welfare Act Program is recommending a permanent traditional adoption for [Child] with [Aunt]." Cassandra Gorman, a subsequent tribal social worker and qualified expert witness, reviewed the Agency's Addendum Report and submitted a declaration in advance of the section 366.26 hearing stating: "The Navajo ICWA Program is in support of the case plan of Adoption by Relative."

Nonetheless, Mother relies on testimony from Gorman suggesting she would support a TCA if it did not have to go through Navajo courts. Mother claims this means the Tribe might have recommended TCA had the juvenile court ordered further proceedings. However, in response to a question by the trial court expressing this view, Gorman testified that the only TCA process with which she was familiar involved going through the Navajo tribal court. In any case, Gorman agreed that "the tribe's position . . . is that a regular adoption is in [the] best interests of the" Child. She further agreed that tribal leadership had to approve a TCA, "that [the] process can take time, and [tribal leadership] may not agree to it."[3] Gorman's testimony at the section 366.26 hearing does not support that the Tribe "identified . . . tribal customary adoption . . . for . . . [C]hild." (§ 366.26, subd. (c)(1)(B)(vi)(II).)

In addition, Mother suggests the juvenile court should have discounted the Tribe's support of a standard adoption. Mother argues because the Navajo Nation is based out-of-state, those involved in making the decision in this matter did not understand that under California law TCAs are not

_____

3      Ms. Gorman also explained, "Our tribal court is very backlogged. It can take about two to three years in order for a TCA to even be approved. It takes a very long time, and I want permanency for [the Child]. And through this court that will happen sooner."

required to go first through a tribal court.  As the trial court explained during the hearing, a "tribe would typically provide the terms and conditions [of the TCA] but it wouldn't necessarily go through the tribal court system."

The Welfare and Institutions Code defines " 'tribal customary adoption' " as "adoption by and through the tribal custom, traditions, or law of an Indian child's tribe."  (§ 366.24, subd. (a)(1).)  As clarified by the trial court, the Navajo Nation tribal "customs, traditions, or law" determine "that [a TCA is] a [tribal] court process.  It might not be for all tribes, but that is what it sounds like; that the [Navajo tribal] court would have to ratify the TCA and then give it to this court."  Under these circumstances we see no basis for concluding the Tribe does not understand its own "custom, traditions, or law."

Further, the record does not support Mother's claim that failure by the Agency to include in its court recommendation a TCA analysis led the Navajo tribe to misunderstand California's TCA requirements.  First, the Navajo tribe's own rules require the TCA to go through its tribal court.  It is immaterial whether the California courts require that step because the record in this case shows the Tribe does.

Second, even if the Agency's assessments did not discuss the TCA option, the error is harmless.  The record here demonstrates Child wanted Aunt to adopt her and Aunt wanted to adopt Child.  Going through the tribal court would take several years, and the Child was already 13 years old during the trial (she is now 14).  Additionally, tribal social workers were involved closely with the Agency in arriving at the permanent placement plan recommended to the court.  At no time did the tribe seek TCA as an option for Child's placement.  (See *In re A.M.* (2013) 215 Cal.App.4th 339, 350–351 ["The court has no duty to make any orders relating to TCA unless a

5

tribe requests a 120–day continuance to complete the home study and TCA or unless it is presented with a TCA order from the tribe and must afford it full faith and credit."].)

2. *Beneficial Parent-Child Relationship Exception*

A court may decline to terminate parental rights if it "finds a compelling reason for determining that termination would be detrimental to the child due to . . . [t]he parent[] ha[s] maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) A parent thus must prove three elements "to establish the exception: (1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*In re Caden C.* (2021) 11 Cal.5th 614, 631.)

Mother conceded at the section 366.26 hearing that she "has not met the initial prong of consistent in-person visitation, regular and consistent visitation, with her daughter." Although she now contends that element is satisfied, we need not accept her belated arguments. (See, e.g., *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 50–51 [declining to consider aspect of due process argument conceded earlier in the trial court].)

As to the second element, Mother did not argue below, and fails to argue on appeal, why terminating the parental relationship would be detrimental to Child. This forfeits Mother's arguments as to this element. (See, e.g., *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 716 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited]."].)

6

As to the third element, Mother argues a parent-child relationship exists but fails to explain why the continuation of the relationship would benefit Child. Mother forfeited her arguments as to this issue as well. (See, e.g., *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them."].) Even if she had not, we find the court's assessment of this element was supported by substantial evidence. As noted above there was a serious history of abuse in Mother's custody. After being removed, Child refused to communicate with Mother for over a year, saying she was afraid of Mother. Gorman testified that Child "has a lot of trauma, and she just does not want contact" from Mother. According to Gorman, Child "believe[d] that her mother has not changed," and wanted Mother's parental rights terminated.

Mother argues there was evidence of a beneficial relationship because Child "was raised primarily in her mother's care . . . for over 12 years"; "the relationship between the two of them is improving"; and "Mother is sober and she completed therapy, group counseling, support services and other services to maintain her sobriety and to address other sources of risks she posed to her daughter." The juvenile court found that Child "did spend a large portion of her life with the mother," and that there was "possibly" room for the relationship to grow, but nonetheless determined these factors were "outweigh[ed]" by "the negative effect of the interaction between [Mother] and [Child] and the way [Child] feels about [Mother] today and very likely will continue to feel for the near future." This conclusion has sufficient support in the record and does not constitute an abuse of discretion.

## DISPOSITION

For the reasons stated above the order is affirmed.

RUBIN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

KELETY, J.